RICKY A. MCCOY *v.* COMMISSIONER
OF PUBLIC SAFETY
(SC 18545)

Rogers, C. J., and Norcott, Katz, Palmer, McLachlan, Eveleigh and Vertefeuille, Js.

Argued September 8, 2010—officially released January 5, 2011*

*Jane R. Rosenberg,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Ralph D. Sherman,* for the appellee (plaintiff).

*Opinion*

EVELEIGH, J. The defendant, the commissioner of public safety,[1] appeals from the summary judgment ren-

---

* January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] We note that although the complaint specifically named Leonard C. Boyle, in his capacity as the commissioner of public safety, as the defendant, we refer herein to the commissioner of public safety as the defendant.

dered by the trial court partially in favor of the plaintiff, Ricky A. McCoy, declaring illegal the defendant's designation of the plaintiff as a "convicted felon" and permanently enjoining the defendant from designating any person a convicted felon because of a second conviction within ten years under General Statutes § 14-227a,[2]

[2] General Statutes § 14-227a provides in relevant part: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . and 'motor vehicle' includes a snowmobile and all-terrain vehicle, as those terms are defined in section 14-379.

\* \* \*

"(g) Any person who violates any provision of subsection (a) of this section shall: (1) For conviction of a first violation, (A) be fined not less than five hundred dollars or more than one thousand dollars, and (B) be (i) imprisoned not more than six months, forty-eight consecutive hours of which may not be suspended or reduced in any manner, or (ii) imprisoned not more than six months, with the execution of such sentence of imprisonment suspended entirely and a period of probation imposed requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) have such person's motor vehicle operator's license or nonresident operating privilege suspended for one year; (2) for conviction of a second violation within ten years after a prior conviction for the same offense, (A) be fined not less than one thousand dollars or more than four thousand dollars, (B) be imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and sentenced to a period of probation requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) (i) if such person is under twenty-one years of age at the time of the offense, have such person's motor vehicle operator's license or nonresident operating privilege suspended for three years or until the date of such person's twenty-first birthday, whichever is longer, and be prohibited for the two-year period following completion of such period of suspension from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device, as defined in section 14-227j; or (ii) if such person is twenty-one years of age or older at the time of the offense, have such person's motor vehicle operator's license or nonresident operating privilege suspended for one year and be

operating a vehicle while under the influence of drugs or alcohol (driving while intoxicated). The sole issue in this appeal is whether a second conviction for a breach[3] of § 14-227a within a ten year period is classified under the Penal Code as a crime, specifically, a felony, or whether, as the trial court concluded, it is classified as a " 'motor vehicle violation.' " We conclude that a breach of § 14-227a does not fall within the motor vehicle violation exception to the definition of a criminal "offense" pursuant to General Statutes § 53a-24 (a), and, therefore, a second conviction under § 14-227a within

prohibited for the two-year period following completion of such period of suspension from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device, as defined in section 14-227j; and (3) for conviction of a third and subsequent violation within ten years after a prior conviction for the same offense, (A) be fined not less than two thousand dollars or more than eight thousand dollars, (B) be imprisoned not more than three years, one year of which may not be suspended or reduced in any manner, and sentenced to a period of probation requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) have such person's motor vehicle operator's license or nonresident operating privilege permanently revoked upon such third offense. For purposes of the imposition of penalties for a second or third and subsequent offense pursuant to this subsection, a conviction under the provisions of subsection (a) of this section in effect on October 1, 1981, or as amended thereafter, a conviction under the provisions of either subdivision (1) or (2) of subsection (a) of this section, a conviction under the provisions of section 53a-56b or 53a-60d or a conviction in any other state of any offense the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) of this section or section 53a-56b or 53a-60d, shall constitute a prior conviction for the same offense. . . ."

Several technical changes have been made to various subsections of § 14-227a since the relevant time of the proceedings in the present case. See, e.g., Public Acts 2004, No. 04-199, § 31; Public Acts 2004, No. 04-257, § 101; Public Acts 2006, No. 06-147, § 1; Public Acts 2010, No. 10-110, §§ 6, 45, 46. Those changes, however, are not relevant to this appeal. For purposes of clarity, we refer to the current revision of the statute.

[3] Throughout this opinion, we use the term "breach" to indicate conduct that is prohibited by a given statutory provision. In the interest of clarity, our use of the terms "violation," "infraction," "offense," or their various forms is restricted to the meanings provided in General Statutes §§ 53a-24 through 53a-27.

a ten year period is a felony because it carries with it a term of imprisonment of up to two years. Accordingly, we reverse the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On May 7, 2004, the plaintiff was convicted of driving while intoxicated for the second time in a ten year period. Subsequently, at the plaintiff's request, the defendant provided him with a copy of his criminal history record, which included the designation "CONVICTED FELON." Following the receipt of that record, the plaintiff, pursuant to General Statutes § 4-174,[4] petitioned the defendant to repeal the regulations under which the plaintiff had been designated a convicted felon, and requested a new criminal history record without that designation. After the defendant denied this request, the plaintiff commenced the present action, seeking, inter alia: (1) a declaration that the defendant had enacted an unlawful regulation permitting it to classify the plaintiff as a convicted felon because he had failed to follow the rule-making procedures required under the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.; and (2) a permanent injunction prohibiting the defendant from classifying any individual as a convicted felon on the basis of a qualifying second conviction under § 14-227a.[5] Thereafter, the parties agreed that summary judgment was an appropriate manner by which to resolve the case, and filed cross motions for summary judgment.

[4] General Statutes § 4-174 provides: "Any interested person may petition an agency requesting the promulgation, amendment, or repeal of a regulation. Each agency shall prescribe by regulation the form for petitions and the procedure for their submission, consideration, and disposition. Within thirty days after submission of a petition, the agency either shall deny the petition in writing stating its reasons for the denials or shall initiate regulation-making proceedings in accordance with section 4-168."

[5] The plaintiff also sought an order compelling the defendant to provide him with a new printed criminal history, without a convicted felon notation.

The trial court granted in part and denied in part the parties' motions. Specifically, the trial court rendered judgment in favor of the defendant on the plaintiff's claim for a declaratory judgment, concluding that the defendant's designation of the plaintiff as a convicted felon did not constitute rule making. The trial court rendered judgment in favor of the plaintiff on the second issue. It concluded that, although a second conviction under § 14-227a carries a term of incarceration consistent with the definition of a felony, a second conviction could not be classified as a felony because it falls under the motor vehicle violation exception to the definition of a criminal offense set forth in § 53a-24 (a). Accordingly, the trial court issued a declaratory judgment that the plaintiff's designation as a convicted felon was illegal and permanently enjoined the defendant from labeling any person as a convicted felon on the basis of a second conviction under § 14-227a within a ten year period. The defendant's appeal from the partial judgment in favor of the plaintiff followed.[6]

The defendant contends that the text and history of § 14-227a evidence a clear legislative intent that driving while intoxicated constitutes a criminal offense, which in turn is subject to classification as a felony upon a second conviction within a ten year period by virtue of the punishment prescribed. The defendant claims that, in concluding that a breach of § 14-227a falls within the motor vehicle violation exception to the definition of offense under § 53a-24 (a) of the Penal Code, the trial court improperly declined to apply the definition of violation to the phrase motor vehicle violation, which would have limited that exception to breaches punishable by fine only. Finally, the defendant contends that the trial court relied on mere dicta to support its con-

---

[6] The defendant appealed from the judgment of the trial court to the Appellate Court, and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

struction. In response, the plaintiff claims that the trial court properly determined that a second conviction under § 14-227a falls within the motor vehicle violation exception to the definition of offense and therefore cannot be a felony. The plaintiff contends that this construction is supported by other statutes and case law evidencing that the definition of violation under the Penal Code does not apply to the motor vehicle violation exception to the definition of offense. We agree with the defendant.

At the outset, we set forth the standard of review. The resolution of this appeal requires us to interpret § 14-227a. "Well settled principles of statutory interpretation govern our review. . . . Because statutory interpretation is a question of law, our review is de novo. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general

subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *Woodrow Wilson of Middletown, LLC* v. *Connecticut Housing Finance Authority*, 294 Conn. 639, 644–45, 986 A.2d 271 (2010).

We begin with the relevant statutory text. Section 14-227a provides in relevant part: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the *offense* of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . and 'motor vehicle' includes a snowmobile and all-terrain vehicle, as those terms are defined in section 14-379.

\* \* \*

"(g) Any person who violates any provision of subsection (a) of this section shall . . . (2) for conviction of a second violation within ten years after a prior conviction for the same *offense*, (A) be fined not less than one thousand dollars or more than four thousand dollars, (B) *be imprisoned not more than two years*, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and sentenced to a period of probation requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) (i) if such person is under twenty-one years of age at the time of the offense, have such person's motor vehicle operator's license or nonresident operating privilege suspended for three years or until the date of such person's twenty-first birthday,

whichever is longer, and be prohibited for the two-year period following completion of such period of suspension from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved interlock device, as defined in section 14-227j; or (ii) if such person is twenty-one years of age or older at the time of the offense, have such person's motor vehicle operator's license or nonresident operating privilege suspended for one year and be prohibited for the two-year period following completion of such period of suspension from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device, as defined in section 14-227j . . . ." (Emphasis added.)

The plain language of § 14-227a clearly indicates that the legislature intended a violation of that provision to be a criminal offense. First, the statute clearly defines operating a motor vehicle while under the influence of intoxicating liquor or any drug as an offense. Section 14-227a (a) provides in relevant part: "A person commits the *offense* of operating a motor vehicle while under the influence of intoxicating liquor or any drug . . . ." (Emphasis added.) Indeed, the statute repeatedly uses the term offense to describe a breach of § 14-227a. See General Statutes § 14-227a (b) ("at the time of the alleged offense"); General Statutes § 14-227a (c) ("at the time of the alleged offense"); General Statutes § 14-227a (g) (2) ("a prior conviction for the same offense"); General Statutes § 14-227a (g) (3) ("a second or third and subsequent offense . . . [and] a conviction in any other state of any offense . . . shall constitute a prior conviction for the same offense").

Second, the statute repeatedly refers to a prosecution for a breach of § 14-227a. In two such instances, the statute uses the term "criminal prosecution." General Statutes § 14-227a (b) ("in any criminal prosecution"); General Statutes § 14-227a (e) ("[i]n any criminal prose-

cution"). In the other instances, the statute uses the term prosecution without defining it. See General Statutes § 14-227a (b) ("any prosecution under this section"); General Statutes § 14-227a (c) ("[i]n any prosecution"); General Statutes § 14-227a (k) ("subsequent prosecution"). The legislature's use of the term prosecution in all of these instances supports the conclusion that the legislature intended a violation of § 14-227a to be a crime. This understanding of the legislature's use of the term prosecution is bolstered by the definition of prosecution in Black's Law Dictionary, which defines prosecution as "[a] criminal proceeding in which an accused person is tried . . . ." Black's Law Dictionary (9th Ed. 2009); see *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford,* 298 Conn. 191, 200–201, 3 A.3d 56 (2010) (" 'In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly.' General Statutes § 1-1 [a]. 'If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary.' "). It would torture the plain meaning of § 14-227a to conclude that the legislature established criminal guidelines for motor vehicle violations that, by definition, are not crimes. See General Statutes § 53a-24.

Third, the plain language of the statute demonstrates that the legislature understood a breach of § 14-227a to be a serious criminal offense. Section 14-227a (g) provides that a conviction under General Statutes § 53a-56b, which defines the offense of manslaughter in the second degree with a motor vehicle and is a class C felony, or General Statutes § 53a-60d, which defines assault in the second degree with a motor vehicle and is a class D felony, shall constitute a prior conviction

for the same offense as § 14-227a.[7] Accordingly, the plain language of the statute reveals that the legislature understood a violation of § 14-227a to be comparable to a felony involving a motor vehicle.[8]

The legislature made clear its intent that a second conviction under § 14-227a within a ten year period be a felony when it amended that statute in 1999. Public Acts 1999, No. 99-255, § 1 (P.A. 99-255). General Statutes § 53a-25[9] provides in relevant part: "(a) An offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony. . . .

"(c) . . . Any offense defined in any other section of the general statutes which, by virtue of an expressly specified sentence, is within the definition set forth in subsection (a) shall be deemed an unclassified felony." Section 14-227a (g) (2) provides, inter alia, that a person who is convicted of a second violation of § 14-227a within ten years after a prior conviction for the same offense shall "be imprisoned not more than two years . . . ." The legislature chose to increase the penalty for a second conviction under § 14-227a within ten years to a possible term of imprisonment up to two years in 1999. See P.A. 99-255, § 1. Prior to that time, a second conviction under § 14-227a within a ten year period was

---

[7] See footnote 2 of this opinion.

[8] It is important to note that the legislature amended § 14-227a to provide that convictions under §§ 53a-56b and 53a-60d constitute prior convictions for the same offense at the same time it increased the term of imprisonment for a second conviction to two years. See Public Acts 1999, No. 99-255, § 1.

[9] General Statutes § 53a-25 provides: "(a) An offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony.

"(b) Felonies are classified for the purposes of sentence as follows: (1) Class A, (2) class B, (3) class C, (4) class D, (5) unclassified and (6) capital felonies.

"(c) The particular classification of each felony defined in this chapter is expressly designated in the section defining it. Any offense defined in any other section of the general statutes which, by virtue of an expressly specified sentence, is within the definition set forth in subsection (a) shall be deemed an unclassified felony."

punishable by a term of imprisonment of not more than one year.[10] At the time the legislature chose to make a second conviction under § 14-227a punishable by a term of imprisonment of up to two years, § 53a-25 had been in effect for approximately thirty years. "Our case law is clear . . . that when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent and to know of all other existing statutes and the effect that its action or nonaction will have upon any one of them. . . . *AvalonBay Communities, Inc.* v. *Zoning Commission*, 280 Conn. 405, 417, 908 A.2d 1033 (2006); see also *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 779, 900 A.2d 1 (2006) (noting presumption that, if legislature intends to limit or expand jurisdiction, it knows how to express that intent)." (Internal quotation marks omitted.) *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 475 n.12, 940 A.2d 742 (2008); see also *Stein* v. *Hillebrand*, 240 Conn. 35, 42–43, 688 A.2d 1317 (1997) (legislature presumed to have knowledge of existing laws and presumed to intend to create harmonious body of law). Accordingly, the legislature's decision to make a second conviction under § 14-227a within a ten year period punishable by a term of imprisonment in excess of one year is a strong indication that the legislature intended it to be a felony.

Thus, the plain language of the statute supports the conclusion that the legislature intended a breach of § 14-227a to be a crime. The plaintiff asserts, however, that a breach of § 14-227a is a motor vehicle violation and therefore excluded from the definition of offense by § 53a-24 (a).[11] As directed by § 1-2z, we look to related

[10] From 1983 through 1999, a third conviction under § 14-227a within a ten year period was punishable by a term of imprisonment of up to two years.

[11] General Statutes § 53a-24 provides: "(a) The term 'offense' means any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and

statutes for ascertaining whether the legislature intended a breach of § 14-227a to be a motor vehicle violation.

Section 53a-24 (a) provides in relevant part: "The term 'offense' means any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. . . ." Section 53a-24 does not define the term motor vehicle violation. The term violation is defined, however, in General Statutes § 53a-27. Section 53a-27 provides: "(a) An offense, for which the only sentence authorized is a fine, is a violation unless expressly designated an infraction.

"(b) Every violation defined in this chapter is expressly designated as such. Any offense defined in any other section which is not expressly designated a violation or infraction shall be deemed a violation if, notwithstanding any other express designation, it is within the definition set forth in subsection (a)."

Because the legislature has not defined motor vehicle violation, but has defined violation, we conclude that it is reasonable to apply the definition of violation to the phrase motor vehicle violation. See *Rainforest Cafe, Inc.* v. *Dept. of Revenue Services*, 293 Conn. 363, 373, 977 A.2d 650 (2009) ("[i]t is axiomatic that this statutory definition is binding on our courts"); see also General Statutes § 1-2z ("[t]he meaning of a statute shall, in the

misdemeanors. Every offense which is not a 'crime' is a 'violation'. Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense.

"(b) Notwithstanding the provisions of subsection (a) of this section, the provisions of sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations. Said provisions shall apply to convictions under section 21a-278 except that the execution of any mandatory minimum sentence imposed under the provisions of said section may not be suspended."

first instance, be ascertained from the text of the statute itself and its relationship to other statutes"); *International Business Machines Corp.* v. *Brown*, 167 Conn. 123, 134, 355 A.2d 236 (1974) ("[w]hen legislation contains a specific definition, the courts are bound to accept that definition"). Applying the definition of violation to the term motor vehicle violation, we conclude that a motor vehicle violation is an offense committed with a motor vehicle for which the only sentence authorized is a fine. Accordingly, because a violation of § 14-227a carries a possible term of imprisonment, it is not a motor vehicle violation.[12]

[12] The dissent asserts that a breach of the laws contained in the motor vehicle code cannot constitute a crime because the legislature has drawn a distinction between a person convicted of a crime and a person convicted of a violation of § 14-227a, or other motor vehicle laws that carry a potential term of imprisonment. First, the dissent cites to General Statutes § 14-44 (b), which delineates the requirements for obtaining a commercial operator's license. Section 14-44 (b) provides in relevant part: "Each applicant for an operator's license bearing an endorsement or the renewal of such a license shall furnish the commissioner [of motor vehicles], or the commissioner's authorized representative, with satisfactory evidence, under oath, to prove that such person has no criminal record and has not been convicted of a violation of subsection (a) of section 14-227a within five years of the date of application and that no reason exists for a refusal to grant or renew such an operator's license bearing an endorsement. . . ."

It is important to note that, contrary to the language quoted in the dissenting opinion, § 14-44 (b) does not contain the word "or" between "criminal record" and "has not been convicted of a violation of subsection (a) of section 14-227a within five years . . . ." To the contrary, we conclude that the language of the statute allows for an applicant to have a criminal record containing a conviction for a violation of § 14-227a as long as it is not within five years of the date of application. Nothing in that statute prohibits this court from construing § 14-227a as a criminal offense.

Second, we disagree with the dissent that subsection (b) of § 53a-24, which sets forth the limitation on the motor vehicle violation exception to the definition of offense in subsection (a), supports the conclusion that a violation of § 14-227a falls within the motor vehicle violation exception to the definition of offense. That subsection provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, the provisions of sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations. . . ." General Statutes § 53a-24 (b). The dissent asserts that because § 53a-24 (b) references sections that apply to convictions with terms of imprisonment when it was describing procedures applicable to motor vehicle violations,

Indeed, under § 53a-24, the motor vehicle violation exception to the definition of offense is limited to those offenses that are *defined* as motor vehicle violations. Specifically, § 53a-24 (a) provides in relevant part that "[t]he term 'offense' means any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, *except one that defines a motor vehicle violation* or is deemed to be an infraction. . . ." (Emphasis added.) The legislature, therefore, created the term motor vehicle violation to have a discrete meaning within the statutory scheme, and the legislature can define breaches of particular statutes as a motor vehicle violation, much like it defines a breach of some statutes as an infraction. See, e.g., General Statutes § 14-96b (d) ("[f]ailure to have headlamps in accordance with the requirements of this section shall be an infraction"); General Statutes § 14-96c (d) ("[f]ailure to have tail lamps or failure to illuminate the rear registration plate as required in this section shall be an infraction"); General Statutes § 14-96d (c) ("[f]ailure to carry and mount reflectors as required in this section shall be an infraction"). A review of § 14-227a reveals that the legislature has chosen not to define a breach of that statute as a motor vehicle violation.[13] Accordingly, the failure of the legislature to define a breach

the legislature could not have intended the term motor vehicle violation to apply only to those breaches punishable by a fine. A review of §§ 53a-28 to 53a-44 reveals that some of the provisions in the specified range never could be applied to a breach of the motor vehicle laws. See, e.g., General Statutes §§ 53a-35b and 53a-35c (addressing life imprisonment). Therefore, we conclude that the legislature intended to apply only those provisions, or parts thereof, within the stated range that are relevant to motor vehicle laws punishable by fine only to a motor vehicle violation.

[13] Indeed, a review of the other statutes in the motor vehicle chapter reveals that the legislature has not chosen to define a breach of any statute as a motor vehicle violation.

of § 14-227a as a motor vehicle violation is evidence that the legislature did not intend for it to fall within the motor vehicle violation exception to the definition of offense.

We also find it persuasive that the phrase "define[d] [as] a motor vehicle violation" is contained in the same clause as infraction within § 53a-24 (a). "Where a provision contains two or more words grouped together, we often examine a particular word's relationship to the associated words and phrases to determine its meaning pursuant to the canon of construction noscitur a sociis." *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 740, 873 A.2d 898 (2005). Applying the principle of noscitur a sociis to the phrase motor vehicle violation further bolsters our conclusion that the legislature intended to exclude only breaches with relatively minor penalties from the definition of offense.

The plaintiff seems to assert that a breach of § 14-227a is a motor vehicle violation simply because of its placement within the motor vehicle chapter. We disagree. At the time § 14-227a was originally enacted in 1963, the Penal Code did not exist. See Public Acts 1963, No. 616, § 1. The Penal Code was not adopted until 1969, approximately six years after the legislature decided to criminalize driving under the influence in § 14-227a. Because the Penal Code did not exist at the time the legislature adopted § 14-227a, its placement within the motor vehicle statutes has no impact on determining legislative intent.

A review of the motor vehicle chapter reveals other statutes that, like § 14-227a, provide for a term of imprisonment without classifying the breach as a misdemeanor or a felony. For instance, General Statutes § 14-215 (operating while registration or license is refused, suspended or revoked), General Statutes § 14-222 (reckless driving), General Statutes § 14-223a (striking officer

with motor vehicle), General Statutes § 14-224 (evading responsibility with motor vehicle), and General Statutes § 14-225 (evading responsibility in operation of other vehicles), all provide for a term of imprisonment without classifying the breach as a misdemeanor or a felony. An examination of the statutes in the motor vehicle chapter that the legislature has classified as misdemeanors or felonies simply reinforces our conclusion that the legislature intended a violation of § 14-227a to be a crime. All or some of the breaches of the motor vehicle code that the legislature has specifically classified as misdemeanors and felonies are much less serious breaches than driving under the influence of alcohol or drugs. For instance, the legislature has classified selling or repairing a motor vehicle without a license as a class B misdemeanor under General Statutes § 14-52, selling used motor vehicle parts without a motor vehicle recycler's permit as a class C misdemeanor under General Statutes § 14-62b, and operating without insurance as a class D felony under General Statutes § 14-223 (b). It is axiomatic that the legislature is presumed to have acted so as to create a consistent body of law. See *Brown & Brown, Inc.* v. *Blumenthal,* 297 Conn. 710, 725, 1 A.3d 21 (2010) ("legislature is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of law" [internal quotation marks omitted]), citing *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles,* 293 Conn. 382, 398, 978 A.2d 49 (2009). It would yield an absurd result to interpret a second conviction of driving under the influence within a ten year period as a motor vehicle violation, while treating these other, less serious breaches of the motor vehicle code, as crimes.

Indeed, § 14-224 also supports the conclusion that a second conviction for a breach of § 14-227a within a ten year period is a felony. Section 14-224 addresses

evading responsibility in the operation of motor vehicles. Subsection (f) of § 14-224 provides that "[a]ny person who [is knowingly involved in an accident which causes serious physical injury . . . or results in the death of any other person and does not at once stop and render such assistance as may be needed and give his name, address and operator's license number and registration number to the person injured or to any officer or witness to the death or serious physical injury of any person] shall be fined not more than ten thousand dollars or be imprisoned not less than one year nor more than ten years or be both fined and imprisoned." Applying the plaintiff's reasoning, any statute within the motor vehicle chapter that is not specified as a felony or misdemeanor is not a crime and, therefore, an individual could be imprisoned for up to ten years for a violation of § 14-224, but it still would not be considered a crime.[14] Such an interpretation yields a result that is both absurd and unreasonable.

General Statutes § 53a-40f (a) further supports the conclusion that the legislature intended that a second conviction under § 14-227a would be treated as a felony. Consistent with the multiple offender provision in § 14-227a (g), § 53a-40f (a) provides: "A persistent operating while under the influence felony offender is a person who (1) stands convicted of a violation of section 53a-56b or 53a-60d and (2) has, prior to the commission of the present crime and within the preceding ten years, been convicted of a violation of section 53a-56b or 53a-

---

[14] The dissent asserts that "construing the 'motor vehicle violation' exception to the definition of offense in § 53a-24 to mean a breach of any motor vehicle law, irrespective of the penalty attached, is the only construction consistent with both these cases [treating breaches of motor vehicle statutes with potential terms of imprisonment as not being classified as criminal offenses under the Penal Code] and the body of our General Statutes . . . ." We disagree and conclude that it is entirely unreasonable to conclude that the legislature intended for an individual to be imprisoned for up to ten years for a breach that is not considered a crime.

60d or subsection (a) of section 14-227a or been convicted in any other state of an offense the essential elements of which are substantially the same as section 53a-56b or 53a-60d or subsection (a) of section 14-227a."[15] The enumerated offenses, manslaughter in the second degree with a motor vehicle and assault in the second degree with a motor vehicle, are class C and class D felonies, respectively. To deem a person a persistent felony offender presumably requires that all of the qualifying offenses, in and of themselves, could constitute felonies. It is also important to note that General Statutes §§ 53a-56b and 53a-60d were first referenced in § 14-227a at the same time that the legislature increased the term of imprisonment for a second conviction to up to two years. See P.A. 99-255, § 1. Accordingly, we conclude that the legislature's inclusion of §§ 53a-56b and 53a-60d in § 14-227a (g) evidences its intent that a conviction of a second breach of § 14-227a within a ten year period be a felony.[16]

---

[15] General Statutes § 53a-40f (b) provides: "When any person has been found to be a persistent operating while under the influence felony offender, the court, in lieu of imposing the sentence authorized by section 53a-35a for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony."

[16] The dissent concludes that "[t]he 'persistent' designation is attached to the *conduct*—operating under the influence, an element shared by all the offenses—not the *felony designation*." (Emphasis in original.) In support of its conclusion, the dissent relies on the fact that "because a first offense under § 14-227a carries a maximum term of imprisonment that would render it a misdemeanor, if subject to classification as a criminal offense, it could not under such circumstances constitute a felony." The dissent also relies on the fact that driving under the influence may be considered a lesser included offense of §§ 53a-56b and 53a-60d. The dissent's position distorts the plain meaning of the statute. What the dissent fails to note is that the above-referenced criminal statutes were first referenced in § 14-227a at the same time that the legislature increased the term of imprisonment for a second conviction to up to two years. See P.A. 99-255, § 1. Therefore, "a conviction under the provisions of section 53a-56b or 53a-60d or a conviction in any other state of any offense the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) of this section or section 53a-56b or 53a-60d, shall constitute a prior conviction for the same offense." General Statutes § 14-227a (g).

An interpretation of § 14-227a as a crime is consistent with this court's reasoning in *State* v. *Dukes*, 209 Conn. 98, 124, 547 A.2d 10 (1988). In *Dukes*, this court was required to determine whether a defendant's federal and state constitutional rights were violated by the admission of evidence obtained during a motor vehicle

Section 53a-40f is entitled: "Persistent operating under the influence felony offender. Authorized sentences." That section explains the elements of being "[a] persistent operating while under the influence felony offender . . . ." General Statutes § 53a-40f (a). Although § 53a-40f does not define the word persistent, in its common usage, the word persistent means, "insistently repetitive or continuous." American Heritage Dictionary of the English Language (3d Ed. 1992); see also *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 633, 6 A.3d 60 (2010) ("When a statute does not provide a definition, words and phrases in a particular statute are to be construed according to their common usage. . . . To ascertain that usage, we look to the dictionary definition of the term." [Internal quotation marks omitted.]). Thus, if someone has (1) been convicted of a violation of § 53a-56b or § 53a-60d, and (2) has "prior to the commission of the present crime and within the preceding ten years, been convicted of a violation of section 53a-56b or 53a-60d or subsection (a) of section 14-227a or been convicted in any other state of an offense the essential elements of which are substantially the same as section 53a-56b or 53a-60d or subsection (a) of section 14-227a"; General Statutes § 53a-40f (a); that person is a persistent operating while under the influence felony offender. There is no need to torture the wording of this statute. It is clear that if an individual previously was convicted of § 14-227a and violated the designated criminal statutes, that individual is a persistent driving under the influence felony offender. A fortiori, the first offense of § 14-227a is a felony for the subsequent convictions to qualify as persistent driving under the influence felony offenses. Clearly, the legislature's decision to include these other felony offenses in § 14-227a at the same time that it increased the possible term of imprisonment for a second breach of § 14-227a demonstrates that the legislature intended the second offense with a penalty of up to two years to be a felony. We need not refer to the first offense, as does the dissent, since it is the second offense that is in question in the present case. We note, parenthetically, however, that the dissent's recognition of the fact that, with respect to a first conviction under § 14-227a, the "term of imprisonment . . . would render it a misdemeanor," only further serves to weaken the dissent's position that § 14-227a does not deal with a crime. Contrary to the dissent's position, it is our view that this statute, coupled with the language inserted in § 14-227a in 1999, evinces a strong legislative intent to make a second breach of § 14-227a a felony. There can be no other explanation that rationally explains a prior violation under the statute as the basis for a finding that a person is "[a] persistent operating while under the influence felony offender . . . ." General Statutes § 53a-40f (a).

stop for speeding in violation of General Statutes § 14-219 and operating a motor vehicle while license under suspension in violation of General Statutes § 14-215. Id., 100–101. In its discussion, the court concluded that a violation of § 14-215 is a misdemeanor, notwithstanding the fact that, like § 14-227a, § 14-215 is contained within the motor vehicle chapter and was not explicitly classified as a misdemeanor. Id., 124. Accordingly, the court's interpretation of § 14-215 as a misdemeanor is consistent with our interpretation of § 14-227a as a felony.

We acknowledge that the legislature, on occasion, has used the term violation and the phrase motor vehicle violation in a manner that is inconsistent with the definition of violation as an offense punishable by fine only as set forth in § 53a-27. See General Statutes § 53a-28 (e) (2) (referring to conditions relevant to probation for "a motor vehicle violation for which a sentence to a term of imprisonment may be imposed"); General Statutes § 53a-173 (a) (1) (addressing failure to appear in second degree in context of person "charged with the commission of a misdemeanor or a motor vehicle violation for which a sentence to a term of imprisonment may be imposed"); General Statutes § 53a-222a (a) (addressing violation of conditions of release in second degree in context of person "charged with the commission of a misdemeanor or motor vehicle violation for which a sentence to a term of imprisonment may be imposed"). This inconsistency gives rise to some ambiguity in § 53a-24 as to whether the phrase motor vehicle violation is intended only to apply to breaches of a statute for which only fines may be imposed, or also to breaches of a statute for which a term of imprisonment may be imposed. "A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." *In re Jan Carlos D.*, 297 Conn. 16, 21, 997 A.2d 471 (2010).

Therefore, we conclude that the statutory scheme is ambiguous as to whether a second conviction for a breach of § 14-227a within a ten year period is a felony. Under well established principles of statutory construction, when a statute is ambiguous, we may look to "the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Orr*, 291 Conn. 642, 651, 969 A.2d 750 (2009).

The legislative history of § 14-227a supports our conclusion that the legislature intended a second conviction of § 14-227a within a ten year period to be a felony. Section 14-227a was adopted in 1963. Public Acts 1963, No. 616, § 1. At that time, the statute authorized terms of imprisonment. Specifically, the statute provided for imprisonment of not more than six months for a first offense; not less than sixty days nor more than one year for a second offense; and not less than six months nor more than one year for a subsequent offense. See Public Acts 1963, No. 616, § 1. In 1983, the legislature amended the statute and increased the possible terms of imprisonment under the statute to not more than six months for a first offense; not more than one year, forty-eight consecutive hours of which cannot be suspended or reduced, for a second offense; not more than two years, thirty days of which cannot be suspended or reduced, for a third offense.[17] See Public Acts 1983,

[17] The dissent relies on the fact that the legislature did not explicitly state that the 1999 amendments to § 14-227a that increased the penalty for a second conviction under § 14-227a within a ten year period to not more than two years made it a felony. Specifically, the dissent asserts that it "simply cannot accept that the legislature would have intended to establish a new felony under our General Statutes without the barest acknowledgment of that decision and its consequences." As we have explained herein, however, 1999 was not the first time that a repeat offense of driving under the influence was deemed a felony. Indeed, the legislature has treated a third

No. 83-534. In 1999, the statute was amended again to include the current possible terms of imprisonment— namely, not more than six months, forty-eight consecutive hours of which cannot be suspended or reduced, for a first offense; not more than two years, 120 consecutive days of which cannot be suspended or reduced, for a second conviction within ten years; and not more than three years, one year of which may not be suspended or reduced in any manner, for a third offense.[18] P.A. 99-255, § 1 (h).

A thorough examination of the legislative history surrounding these amendments reveals that the legislature considered driving under the influence of alcohol or drugs a serious criminal offense. Indeed, each of these amendments was designed to discourage driving under the influence by making the penalties more severe. In discussing the 1983 amendments to § 14-227a, Representative Martha D. Rothman explained the purpose as follows: "[W]hat we're talking about is starting to change public attitude about drunken drivers. Can this attitude be changed? Yes, it can be . . . . We, as I said, are on a course now that is beginning to change. Change our whole attitude and that is exactly what we're talking about today. I'm not sure that this is going to be the end-all. Truly, it's probably just the first step in that direction. But it certainly is a step in the right direction and I urge passage of this amendment." 26 H.R. Proc., Pt. 19, 1983 Sess., p. 6916. Remarking on the same

conviction under § 14-227a as a felony since 1983. Therefore, we are not persuaded that the legislature's failure to mention the term felony in discussing the 1999 amendments to § 14-227a is indicative of legislative intent.

[18] It is also important to note that General Statutes § 54-56g provides a pretrial alcohol education program for individuals who are facing their first charge of a violation of § 14-227a. If an eligible individual completes the program, he or she is not convicted of a violation of § 14-227a. Therefore, in most cases, a person who is convicted for a second violation of § 14-227a within a ten year period has actually been charged with a violation of § 14-227a three times during that period.

amendment, Representative Alan R. Schlesinger said, "[i]f we're going to make any statement here today, just one, [it] is that if you're a [repeat offender] and you get the pretrial and you come back again and you come back again, you're gonna do some time. That's one thing I think we want to establish here today." Id., p. 6764; see also id., p. 6685, remarks of Representative Eugene A. Migliaro ("[Drunk driving] has to be stopped. We have to get tough. And the plea bargaining be damned. Let these individuals pay the fine. Let these individuals go to jail and get these people off the road so that the families can go out on a Sunday or a holiday and drive with safety and not have to fear for their lives."); id., p. 6687, remarks of Representative Edith Prague (drunk drivers can no longer be let "off with only a slap on the wrist").

In 1985, when the legislature again amended § 14-227a and adopted a "per se" violation, the legislators again recognized the seriousness of driving under the influence and commented on the criminal nature of the offense. For instance, Representative Thomas Dudchik said that "[t]his legislation . . . will make the punishment fit the crime . . . ." 28 H.R. Proc., Pt. 19, 1985 Sess., p. 7031. Senator James Giulietti also remarked as follows: "I am in favor of this legislation . . . it is the only piece of drunk driving legislation that I've seen in fron[t] of the General Assembly, and that we've voted on, that deals with the individual. An individual who has committed the crime of drunk driving. . . . This is the only bill that pinpoints an individual, that punishes an individual, more severely for drunk driving." 28 S. Proc., Pt. 12, 1985 Sess., p. 3951; see also 28 H.R. Proc., Pt. 19, 1985 Sess., p. 7035, remarks of Representative David Wenc (asking whether "crime [of driving under the influence] as defined under the state law meet[s] the same definition as the federal crime"); 28 H.R. Proc., Pt. 30, 1985 Sess., pp. 10,879–80, 10,912, remarks of

Representatives Wenc, Robert Farr, and Richard Cunningham (addressing question of whether amendment setting blood alcohol limit as proof of intoxication is setting forth "new crime" for driving with blood alcohol content above specified level, "new definition for the present crime" or "two different crimes"); 28 S. Proc., Pt. 16, 1985 Sess., pp. 5364–65, remarks of Senators Richard Johnston and Cornelius O'Leary (characterizing statute and punishment therein as "criminal prosecutions," "criminal penalty," and "criminal offense").

In 1999, the legislature again amended § 14-227a to provide for a term of imprisonment of not more than two years for a second offense within ten years. In the discussion of this amendment, the legislature again referred to the penalties under § 14-227a as "criminal penalties" and discussed the statute as "criminalizing" conduct. See 42 S. Proc., Pt. 9, 1999 Sess., pp. 2903–2904, remarks of Senator Martin Looney; see also 42 H.R. Proc., Pt. 19, 1999 Sess., p. 6732, remarks of Representative Paul Doyle ("[i]f the person drank a glass of wine and it was above .02 the normal *criminal* penalties would apply and for the first, basically that person would be able to get . . . the alcohol education program" [emphasis added]).

As the foregoing legislative history reveals, it is abundantly clear that the legislature considered driving under the influence a serious crime. In fact, a report on Substitute Senate Bill 1115, which was incorporated into P.A. 99-255, prepared by the office of legislative research, indicates that the legislature, in passing P.A. 99-255 and increasing the penalty for a second conviction under § 14-227a within a ten year period, was well aware that a breach of § 14-227a was considered a criminal offense. See Office of Legislative Research, Amended Bill Analysis for Substitute Senate Bill 1115, available at http://cga.ct.gov/ps99/ba/1999SB-01115-R00-BA.htm (last visited December 30, 2010).

" 'Although the comments of the office of legislative research are not, in and of themselves, evidence of legislative intent, they properly may bear on the legislature's knowledge of interpretive problems that could arise from a bill.' *Harpaz* v. *Laidlaw Transit, Inc.*, 286 Conn. 102, 124 n.15, 942 A.2d 396 (2008); cf. *State* v. *Tabone*, 279 Conn. 527, 542, 902 A.2d 1058 (2006) (consulting analysis of bill by office of legislative research to ascertain legislative intent)." *State* v. *Courchesne*, 296 Conn. 622, 700, 998 A.2d 1 (2010); *Butts* v. *Bysiewicz*, 298 Conn. 665, 688 n.22, 5 A.3d 932 (2010) (same). The report provides in relevant part: "*Criminal Offense. By law, it is a criminal offense to operate a motor vehicle while under the influence of alcohol.* This *offense* may be prosecuted with or without any direct evidence of a person's [blood alcohol content]. The determinative issue is whether a person's ability to drive has been affected to an appreciable degree. It is also currently a *criminal offense* to operate a motor vehicle with a [blood alcohol content] of .10 [percent] or more. The existence of a [blood alcohol content] of .10 [percent] or more is sufficient to establish the offense. The bill redesignates this *offense* as driving with an 'elevated blood alcohol level' and defines this as driving (1) with a [blood alcohol content] of .10 [percent] or more or (2) with a [blood alcohol content] of .07 [percent] or more if the accused person has a previous conviction for drunk driving. The bill also makes it illegal [for] someone under age [twenty-one] to drive with a [blood alcohol content] of .02 [percent] or more and applies provisions of *the criminal drunk driving law* by reference and adapted accordingly to anyone who violates the prohibition." (Emphasis altered.) Office of Legislative Research, Amended Bill Analysis for Substitute Senate Bill 1115, available at http://cga.ct.gov/ps99/ba/1999SB-01115-R00-BA.htm (last visited December 30, 2010). The repeated use of the terms criminal offense

and offense and the description of § 14-227a as "the criminal drunk driving law," although not dispositive of the legislature's intent, further buttress our conclusion that the legislature intended a breach of § 14-227a to be a criminal offense and not falling within the motor vehicle violation exception to the definition of offense.

The legislative history of § 14-227a clearly demonstrates that the legislature has long understood driving while under the influence to be a crime. Furthermore, this legislative history also demonstrates that, over time, the legislature has adopted increasingly more severe punishments in an effort to discourage driving under the influence.[19] Construing § 14-227a so that a breach is not a criminal offense, as the plaintiff urges, would frustrate the clear intent and public policy behind § 14-227a.[20]

[19] Although the dissent asserts that, "[u]nlike the appropriateness of attaching such consequences to crimes of violence or moral turpitude, a review of the collateral consequences of having been convicted of a felony leads us to conclude that all but two of those consequences would seem to be inappropriately applied to an individual solely on the basis of a qualifying conviction under § 14-227a." We disagree and conclude that whether a second conviction under § 14-227a within a ten year period should carry the collateral consequences of a felony conviction was within the province of the legislature when it chose to make a second conviction of driving under the influence punishable by up to two years imprisonment; the legislature was aware of the ramifications of its decision. Moreover, as we explained previously herein; see footnote 18 of this opinion; due to the existence of the pretrial alcohol education program, in most cases, a person who is convicted for a second violation of § 14-227a within a ten year period has actually been charged with a violation of § 14-227a three times during that period. Accordingly, we are not persuaded that the legislature did not intend for an individual who was convicted of a second breach of § 14-227a within a ten year period to suffer the collateral consequences of a felony conviction.

[20] The dissent asserts that "at the time the Penal Code was enacted and 'motor vehicle violations' were excepted from the classification of criminal offenses, the dominant opinion of breaches of § 14-227a was that such conduct was not particularly reprehensible, and certainly was not considered 'criminal.'" We disagree. First, as we previously explained herein, breaches of § 14-227a have always carried a possible term of imprisonment. Second, in construing § 14-227a for the purposes of this case, we must look to the entire legislative history of the statute and not just the public policy in place

The treatment of driving under the influence in other jurisdictions also bolsters our conclusion that a second conviction for driving under the influence within a ten year period is a felony. "It is true that '[w]here the meaning of a statute is in doubt, reference to legislation in other states and jurisdictions which pertains to the same subject matter, persons, things, or relations may be a helpful source of interpretative guidance.' 2A [J.] Sutherland, Statutory Construction [Sands 4th Ed. 1984] § 52.03." *Johnson* v. *Manson*, 196 Conn. 309, 318–19, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986). Forty-five other states treat repeat offenses of driving under the influence as felonies.[21] Of these, five states treat the second convic-

at the time the statute was enacted. As we have explained, this legislative history clearly indicates that the legislature considers driving under the influence to be a serious criminal offense.

[21] Alabama (Ala. Code § 32-5A-191 [1999]); Alaska (Alaska Stat. § 28.35.030 [2008]); Arizona (Ariz. Rev. Stat. Ann. § 13-604 [2010]); Arkansas (Ark. Code Ann. §§ 5-65-111 and 5-65-112 [2005]); California (Cal. Veh. Code §§ 23152, 23550 and 40000.15 [Deering 2000]); Delaware (Del. Code. Ann. tit. 11, § 4202 [b] [2007]; Del. Code. Ann. tit. 21, §§ 4177 [d] and 4177B [e] [2] [2005]); Florida (Fla. Stat. §§ 316.193 and 775.082 [2007]); Georgia (Ga. Code. Ann. § 40-6-391 [c] and [k] [2007]); Hawaii (Haw. Rev. Stat. § 291E-61 [b] [2007]); Idaho (Idaho Code Ann. §§ 18-8004C [1] [a] and [2] [a], 18-8005 and 18-8006 [2004]); Illinois (625 Ill. Comp. Stat. Ann. 5/11-501 [West 2008]; 730 Ill. Comp. Stat. Ann. 5/5-8-1 [a] [7] and 5/5-8-3 [a] [1] [West 2007]); Indiana (Ind. Code Ann. § 9-30-5-1 et seq. [LexisNexis 2004]; Ind. Code Ann. §§ 35-50-2-6 and 35-50-3-2 et seq. [LexisNexis 2009]); Iowa (Iowa Code Ann. § 321J.2 [2] and [3] [West 2005]); Kansas (Kan. Stat. Ann. § 8-1567 [2001]; Kan. Stat. Ann. § 21-4502 [1] [2007]); Kentucky (Ky. Rev. Stat. Ann. § 189A.010 [5] [Lex-isNexis 2009]); Louisiana (La. Rev. Stat. Ann. § 14:98 [2004]); Maryland (Md. Code Ann. Transp. §§ 21-902, 27-101 and 27-102 [LexisNexis 2009]); Massa-chusetts (Mass. Ann. Laws c. 90, § 24 [LexisNexis 2005]; Mass. Ann. Laws c. 274, § 1 [Law. Co-op. 1992]); Michigan (Mich. Comp. Laws Serv. § 257.625 [8] and [10] [LexisNexis 2010]); Minnesota (Minn. Stat. § 169A.20 et seq. [2008]); Mississippi (Miss. Code Ann. § 63-11-30 [Cum. Sup. 2010]); Missouri (Mo. Rev. Stat. §§ 577.010, 577.012, 577.023, 558.011 and 560.016 [2000]); Montana (Mont. Code Ann. §§ 61-8-401, 61-8-711 [1] and 61-8-714 [2007]); Nebraska (Neb. Rev. Stat. §§ 28-105 and 28-106 [1995]; Neb. Rev. Stat. § 60-6196 et seq. [2007]); Nevada (Nev. Rev. Stat. §§ 193.120 and 484C.400 [2009]); New Hampshire (N.H. Rev. Stat. Ann. § 265-A:18 [Cum. Sup. 2009]); New Mexico (N.M. Stat. § 66-8-102 [2004]); New York (N.Y. Veh. & Traf. Law

tion for driving under the influence as a felony.[22] In adopting amendments to § 14-227a, our legislature was mindful of driving under the influence laws in other states and sought to have Connecticut law be consistent with that of other jurisdictions. See, e.g., 28 H.R. Proc., Pt. 19, 1985 Sess., p. 7035, remarks of Representative Wenc (asking whether "crime [of driving under the influence] as defined under the state law meets the same definition as the federal crime"). Accordingly, based on the overwhelming majority of states that treat subsequent convictions for driving under the influence as felonies, we are persuaded that our legislature did not intend for driving under the influence to fall within the motor vehicle violation exception to the definition of offense.[23]

§ 1193 [McKinney 1996]); North Carolina (N.C. Gen. Stat. § 20-138.5 [2009]); North Dakota (N.D. Cent. Code § 12.1-32-01 [1997]; N.D. Cent. Code § 39-08-01 [2008]); Ohio (Ohio Rev. Code Ann. §§ 2929.14, 2929.16, 2929.18 [B] [3], 2929.19 [C] and 2929.21 [2006]; Ohio. Rev. Code Ann. § 4511.99 [2008]); Oklahoma (Okla. Stat. tit. 47, § 11-902 [2007]); Oregon (Or. Rev. Stat. §§ 813.010, 161.605 and 161.615 [2007]); Pennsylvania (75 Pa. Const. Stat. Ann. §§ 3735.1, 3802, 3803 and 3804 [West 2006]); Rhode Island (R.I. Gen. Laws § 31-27-2 [2010]); South Carolina (S.C. Code Ann. §§ 16-1-10, 16-1-20, 16-1-90 [F] and 16-1-100 [2003]; S.C. Code Ann. § 56-5-2940 [2006]); South Dakota (S.D. Codified Laws §§ 22-6-1 and 22-6-2 [2006]; S.D. Codified Laws § 32-23-2 et seq. [2004]); Tennessee (Tenn. Code Ann. § 40-35-111 [2010]; Tenn. Code Ann. § 55-10-403 [Sup. 2010]); Texas (Tex. Penal Code Ann. §§ 12.21, 12.22, 12.34, 49.04 and 49.09 [West 2003]); Utah (Utah Code Ann. § 41-6a-505 [2005]); Vermont (Vt. Stat. Ann. tit. 13, § 1 [2009]; Vt. Stat. Ann. tit. 23, § 1210 [2009]); Virginia (Va. Code Ann. §§ 18.2-10 [f], 18.2-11 [a] and 18.2-270 [2009]); West Virginia (W. Va. Code Ann. § 17C-5-2 [LexisNexis 2009]); Wisconsin (Wis. Stat. Ann. §§ 346.63, 346.65, 939.50 and 940.25 [West 2005]); and Wyoming (Wyo. Stat. Ann. §§ 6-10-101 and 31-5-233 [2009]).

[22] Idaho, Indiana, Maryland, New York and Oklahoma treat a second conviction for driving under the influence as a felony. As previously explained herein; see footnote 18 of this opinion; due to the presence of the pretrial alcohol education program, in most cases in Connecticut, a second conviction under § 14-227a usually indicates that the person has actually been arrested three times in a ten year period for a violation of § 14-227a.

[23] The dissent asserts that it is "unpersuaded that the choices of other states in this area are relevant to the present question; the majority has not pointed to any state with a comparable motor vehicle exception in their laws, meaning that the question of classifying operating a motor vehicle

The official commentary to the definition of offense in § 53a-24 also evidences the legislature's intent to treat a breach of § 14-227a as a criminal offense and not include it within the motor vehicle violation exception to the definition of offense. The commentary explains: "(a). This section defines the terms 'offense', 'crime', and 'violation'. 'Offense' is a general term which means a breach of state or local 'criminal' law—i.e., one that calls for imprisonment or fine for breach thereof. 'Crime' means either a felony or misdemeanor. *Violation', which must be read in connection with section 53a-27, means an offense calling only for a fine for breach thereof.* The concept of a 'violation', which is taken from the Model Penal Code, is new. Section 53a-24 makes clear that conviction of a violation does not 'give rise to any disability or legal disadvantage based on conviction of a criminal offense.' It is a new category of non-criminal offense; conduct which should be proscribed but conviction for which should in no way brand the offender a 'criminal.' Thus, for example, a person who has been convicted only of a violation can truthfully answer 'no' to the question: Have you ever been convicted of a crime? . . . (b). The definition of 'offense' in subsection (a) makes clear that it does not include motor vehicle infractions. *The purpose of this provision is to except from the operation of the Code, except as provided in subsection (b), motor vehicle*

---

while under the influence in other states would be, as a matter of statute, a far simpler exercise." See footnote 31 of the dissenting opinion. As we have explained herein, the legislative history of § 14-227a demonstrates that many of the amendments to § 14-227a over the years have been intended to make our driving under the influence law consistent with the law of other states and federally recommended guidelines. Accordingly, whether other states have a motor vehicle exception is irrelevant. The only factor that is indicative of whether our legislature intended a second conviction under § 14-227a within a ten year period to be a felony is the fact that the vast majority of other states treat repeat offenses of driving under the influence as a felony, regardless of whether those states have a motor vehicle exception.

*infractions.* Subsection (b), however, provides that the sentencing principles enumerated in sections 53a-28 to 53a-44, inclusive, should apply to motor vehicle violations. Thus, a motor vehicle violator would have the limits of his sentence determined by the motor vehicle section, since his 'offense' would be an 'unclassified misdemeanor' within the meaning of section 53a-26 (c); but he would be sentenced under the principles and procedures of sections 53a-28 to 53a-44." (Emphasis added.) Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. (West 2007) § 53a-24, comment, pp. 454–55. " 'While the commission comment hardly has the force of enacted law, it, nevertheless, may furnish guidance.' *Valeriano* v. *Bronson,* 209 Conn. 75, 94, 546 A.2d 1380 (1988)." *State* v. *Ramos,* 271 Conn. 785, 795 n.9, 860 A.2d 249 (2004). This commentary demonstrates that the drafters of the Penal Code intended to incorporate the meaning of the term violation under § 53a-27 into the term motor vehicle violation, and to exempt only motor vehicle infractions from the definition of offense in § 53a-24. Accordingly, the commentary to the Penal Code provides further support for our conclusion that § 14-227a does not fall within the motor vehicle violation exception to an offense and a second conviction for violation of § 14-227a within a ten year period is a felony.

Finally, we note that this court has frequently referred to a conviction under § 14-227a as a crime or a criminal prosecution. See *State* v. *Singleton,* 174 Conn. 112, 115, 384 A.2d 334 (1977), cert. denied, 440 U.S. 947, 99 S. Ct. 1425, 59 L. Ed. 2d 635 (1979); *State* v. *Englehart,* 158 Conn. 117, 119, 256 A.2d 231 (1969); *State* v. *DeCoster,* 147 Conn. 502, 504, 162 A.2d 704 (1960); *State* v. *McDonough,* 129 Conn. 483, 484, 29 A.2d 582 (1942). Indeed, in 1980, the Appellate Session of the Superior Court squarely considered and rejected an argument by the state that "operating under the influence is not

a crime because it falls within the exception to the definition of 'offense' in § 53a-24, a provision of the [P]enal [C]ode. . . . The argument of the state necessarily assumes that any breach of law involving the use of a motor vehicle constitutes a 'motor vehicle violation' and would therefore fall within the exception." *State* v. *Anonymous (1980-5)*, 36 Conn. Sup. 527, 528–29, 416 A.2d 168 (1980). The court rejected that argument, relying on the commentary to the Penal Code and the definitions in that code that we have discussed previously herein. Id., 529–30. The court held "that the term 'motor vehicle violations,' not being otherwise defined, incorporates the definition of 'violation' contained in § 53a-27 (a) as an offense punishable only by a fine." Id., 530. The Appellate Session of the Superior Court twice thereafter reaffirmed its holding that a violation of § 14-227a is a crime. See *State* v. *Whitney*, 37 Conn. Sup. 864, 866, 440 A.2d 987 (1981); *State* v. *Lavorgna*, 37 Conn. Sup. 767, 778, 437 A.2d 131 (1981). The legislature never thereafter amended the definition of violation or added a new definition for motor vehicle violations, thus suggesting its acquiescence with these rulings.

The plaintiff relies, however, on the 1987 Appellate Court decision in *State* v. *Kluttz*, 9 Conn. App. 686, 521 A.2d 178 (1987). In *Kluttz*, the Appellate Court considered the question of "whether negligent homicide with a motor vehicle, as defined in General Statutes § 14-222a, is a lesser included offense of misconduct with a motor vehicle, as defined in General Statutes § 53a-57 . . . ." Id., 687. A conviction under § 14-222a was punishable by a term of imprisonment of up to six months. Id., 687 n.1. A divided Appellate Court panel concluded: "Although we agree with the defendant that negligent homicide with a motor vehicle is a 'motor vehicle violation' within the meaning of § 53a-24 and therefore is not an 'offense' or 'crime' within the meaning of that statute . . . we hold that it is an offense

for purposes of the lesser included offense doctrine." (Citation omitted.) Id., 690; but see id., 716 (*Bieluch, J.*, concurring) ("I concur in the results of the majority opinion, but disagree with the conclusion that . . . § 14-222a does not proscribe a criminal offense within the meaning of . . . § 53a-24 [a], and with the refusal to invoke the precedent established in *State* v. *Anonymous (1980-5)*, [supra, 36 Conn. Sup. 527]").

In concluding that a violation of § 14-222a fell within the motor vehicle violation exception to the definition of offense, the court in *Kluttz* primarily relied on the unique genealogy of § 14-222a. The Appellate Court noted that the negligent homicide with a motor vehicle statute was originally enacted in 1941, and was codified with the motor vehicle statutes. General Statutes (Sup. 1941) § 235f. Then, in 1971, after the adoption of the Penal Code, the legislature repealed General Statutes § 14-218, the prior negligent homicide with a motor vehicle statute, and reenacted it a few years later in the Penal Code. *State* v. *Kluttz*, supra, 9 Conn. App. 696; see Public Act 1971, No. 30. Then, in 1981, the legislature repealed essentially the same provision from the Penal Code and reenacted it almost verbatim in the motor vehicle chapter. See *State* v. *Kluttz*, supra, 697. The stated purpose of the change was "[t]o classify negligent homicide with a motor vehicle as a motor vehicle violation rather than a criminal offense in the [P]enal [C]ode." House Bill No. 5079 (1981). Significantly, the Appellate Court majority noted among the factors motivating this change: "One factor was that the conduct proscribed by the statute involved only ordinary civil negligence, which could be conduct relatively low on the blameworthiness scale, what was referred to as 'relatively simple acts of negligence,' not involving alcohol; 24 S. Proc., Pt. 3, 1981 Sess., p. 707, remarks of Senator Howard T. Owens, Jr.; and 'an act of simple negligence, nothing to do with criminal negli-

gence, nothing to do with intent, nothing to do with drinking . . . .' 24 H.R. Proc., Pt. 3, 1981 Sess., p. 884, remarks of Representative Richard D. Tulisano." *State* v. *Kluttz*, supra, 697. Based primarily on this legislative history, the Appellate Court concluded that § 14-222a fell within the motor vehicle violation exception to the definition of offense. Id., 698. As we have explained previously herein, contrary to the legislative history of § 14-222a, the legislative history surrounding § 14-227a clearly evidences a legislative intent to impose criminal penalties on convictions for driving under the influence. Accordingly, the Appellate Court's reasoning in *Kluttz* is inapplicable to determining whether a conviction for a second breach of § 14-227a within a ten year period is a felony.

The plaintiff also relies on a number of cases, subsequent to the *Kluttz* decision, in which the Appellate Court concluded that a conviction under § 14-227a is not a crime because it falls within the motor vehicle violation exception to the definition of offense. These decisions lack persuasive force because they simply adopted the *Kluttz* conclusion without undertaking any independent analysis. See *State* v. *Brown*, 22 Conn. App. 108, 111, 575 A.2d 699 (citing *Kluttz*), cert. denied, 216 Conn. 811, 580 A.2d 61 (1990); *State* v. *Trahan*, 45 Conn. App. 722, 733, 697 A.2d 1153 (citing portion of *Brown* that had cited *Kluttz*), cert. denied, 243 Conn. 924, 701 A.2d 660 (1997). As we have explained previously herein, the Appellate Court's reasoning in *Kluttz* is not applicable to § 14-227a. Moreover, in reliance on the reasoning in *Kluttz* that a conviction for a violation of § 14-222a could be deemed a crime for some purposes even though it was not classified as a criminal offense under the Penal Code, several appellate decisions did not analyze whether a conviction under other motor vehicle, or motor vehicle related, statutes constituted a criminal offense under the Penal Code, and instead

simply analyzed whether the conviction constituted a crime for the particular purpose at issue. See *State* v. *Harrison*, 228 Conn. 758, 761, 638 A.2d 601 (1994), and cases cited therein.[24] Despite this tactical decision, we note that this court has continued to refer to convictions under § 14-227a as crimes. See *State* v. *Burnell*, 290 Conn. 634, 642, 966 A.2d 168 (2009); see also *Stash* v. *Commissioner of Motor Vehicles*, 297 Conn. 204, 211 n.6, 999 A.2d 696 (2010) (stating that § 14-227a "criminalizes the act of operating a motor vehicle while under the influence of intoxicating liquor or drugs or both").

On the basis of the foregoing, we conclude that the language of § 14-227a, its relationship to other statutes, its legislative history and the commentary to the Penal Code reveal that the legislature intended driving under the influence to be a criminal offense and not to fall within the motor vehicle violation exception to the definition of an offense, and, therefore, a second conviction under § 14-227a within a ten year period constitutes a

---

[24] In *State* v. *Harrison*, supra, 228 Conn. 763, this court noted: "We have previously held that [w]hat may or may not be a criminal offense for purposes of a particular statutory categorization is not necessarily determinative of whether it is a criminal offense for [other] purposes . . . . *State* v. *Guckian*, [226 Conn. 191, 198, 627 A.2d 407 (1993), quoting *State* v. *Kluttz*, supra, 9 Conn. App. 699]. We do not mechanistically apply [P]enal [C]ode definitions to a statute but interpret the language in a manner that implements the statute's purpose. See, e.g., [*State* v. *Guckian*, supra, 202] (motor vehicle violation is a crime for purposes of qualifying for drug treatment program); *State* v. *Dukes*, [supra, 209 Conn. 122] (motor vehicle violation is a crime for purposes of a reasonable search of occupant of stopped vehicle); see also *State* v. *Brown*, [supra, 22 Conn. App. 112] (motor vehicle violation is a violation of criminal laws for purposes of determining whether condition of probation has been violated); *State* v. *Kluttz*, [supra, 698–700] (negligent homicide with a motor vehicle, a motor vehicle violation, is an offense for purposes of the lesser included offense statute); accord *Illinois* v. *Vitale*, 447 U.S. 410, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980) (traffic violation may be considered an offense for purposes of double jeopardy analysis). Additionally, the Appellate Court has noted that motor vehicle violations are treated as criminal offenses under the Practice Book rules governing procedure in criminal cases. *State* v. *Kluttz*, supra, 698 n.9." (Internal quotation marks omitted.)

felony because it carries with it a possible term of imprisonment in excess of one year. Accordingly, we reverse the judgment of the trial court.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion NORCOTT, PALMER and VERTE-FEUILLE, Js., concurred.

KATZ, J., with whom ROGERS, C. J., and McLACH-LAN, J., join, dissenting. The majority concludes that a second conviction for operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a[1] must constitute

[1] General Statutes § 14-227a provides in relevant part: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight . . . and 'motor vehicle' includes a snowmobile and all-terrain vehicle, as those terms are defined in section 14-379. . . .

"(g) Any person who violates any provision of subsection (a) of this section shall: (1) For conviction of a first violation, (A) be fined not less than five hundred dollars or more than one thousand dollars, and (B) be (i) imprisoned not more than six months, forty-eight consecutive hours of which may not be suspended or reduced in any manner, or (ii) imprisoned not more than six months, with the execution of such sentence of imprisonment suspended entirely and a period of probation imposed requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) have such person's motor vehicle operator's license or nonresident operating privilege suspended for one year; (2) for conviction of a second violation within ten years after a prior conviction for the same offense, (A) be fined not less than one thousand dollars or more than four thousand dollars, (B) be imprisoned not more than two years, one hundred twenty consecutive days of which may not be suspended or reduced in any manner, and sentenced to a period of probation requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) (i) if such person is under twenty-one years of age

a felony because it interprets the terms of that statute to dictate such a conclusion and because it deems textual and extratextual evidence to indicate that the legislature intended such a breach[2] to be treated as a serious offense. If these were the only sources to consider, I might be inclined to agree. The Penal Code, however,

at the time of the offense, have such person's motor vehicle operator's license or nonresident operating privilege suspended for three years or until the date of such person's twenty-first birthday, whichever is longer, and be prohibited for the two-year period following completion of such period of suspension from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device, as defined in section 14-227j, or (ii) if such person is twenty-one years of age or older at the time of the offense, have such person's motor vehicle operator's license or nonresident operating privilege suspended for one year and be prohibited for the two-year period following completion of such period of suspension from operating a motor vehicle unless such motor vehicle is equipped with a functioning, approved ignition interlock device, as defined in section 14-227j; and (3) for conviction of a third and subsequent violation within ten years after a prior conviction for the same offense, (A) be fined not less than two thousand dollars or more than eight thousand dollars, (B) be imprisoned not more than three years, one year of which may not be suspended or reduced in any manner, and sentenced to a period of probation requiring as a condition of such probation that such person perform one hundred hours of community service, as defined in section 14-227e, and (C) have such person's motor vehicle operator's license or nonresident operating privilege permanently revoked upon such third offense. For purposes of the imposition of penalties for a second or third and subsequent offense pursuant to this subsection, a conviction under the provisions of subsection (a) of this section in effect on October 1, 1981, or as amended thereafter, a conviction under the provisions of either subdivision (1) or (2) of subsection (a) of this section, a conviction under the provisions of section 53a-56b or 53a-60d or a conviction in any other state of any offense the essential elements of which are determined by the court to be substantially the same as subdivision (1) or (2) of subsection (a) of this section or section 53a-56b or 53a-60d, shall constitute a prior conviction for the same offense . . . ."

Although there have been several changes made to § 14-227a since the time of the relevant proceedings in the present case, those changes are not relevant to this appeal and, consistent with the majority, I refer herein to the current revision of the statutes. See footnote 2 of the majority opinion.

[2] Throughout this dissenting opinion, I use the term "breach" as a generic term to indicate conduct that is prohibited by a given statutory provision. In the interests of clarity, my use of the terms "violation," "infraction," "offense," or their various forms is restricted to the meanings provided in General Statutes §§ 53a-24 through 53a-27.

provides an exception to the definition of a criminal offense for "motor vehicle violations," and the *only* interpretation of that exception that renders the entire scheme harmonious is one under which § 14-227a falls under that exception. Rather than apply this fundamental principle of statutory construction, however, the majority embraces a construction that essentially renders the exception meaningless. Consistent with prior appellate case law, I would conclude that the statutory text, the legislative history, and related statutes compel the conclusion that the "motor vehicle violation" exception refers to any breach of a motor vehicle law.[3] Therefore, under what I view to be the proper construction of that exception, a breach of § 14-227a falls within that exception and thus cannot not be considered an offense. Accordingly, I would conclude that a second qualifying violation of § 14-227a cannot constitute a felony.

This appeal turns on the meaning of the "motor vehicle violation" exception to the definition of " 'offense' " under General Statutes § 53a-24 (a),[4] a question of statu-

---

[3] As noted later in this dissenting opinion, I recognize that the legislature expressly has designated breaches of certain motor vehicle statutes as misdemeanors or felonies. These designations are given their effect under the rule that more specific provisions control over more general ones. *In re Jan Carlos D.*, 297 Conn. 16, 25, 997 A.2d 471 (2010) ("[i]t is a well established principle of statutory construction that specific terms in a statute covering a given subject matter will prevail over the more general language of the same or another statute that otherwise might be controlling" [internal quotation marks omitted]).

[4] General Statutes § 53a-24 provides: "(a) The term 'offense' means any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, except one that defines a motor vehicle violation or is deemed to be an infraction. The term 'crime' comprises felonies and misdemeanors. Every offense which is not a 'crime' is a 'violation'. Conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense.

"(b) Notwithstanding the provisions of subsection (a) of this section, the provisions of sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle

tory interpretation over which we exercise plenary review. *Ziotas* v. *Reardon Law Firm, P.C.*, 296 Conn. 579, 587, 997 A.2d 453 (2010). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . .

. "[W]e are [also] guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 197–98, 3 A.3d 56 (2010).

Interpreting the statutory scheme at issue in the present case involves the consideration of several distinct, but related, statutory provisions. To determine whether a conviction under § 14-227a can constitute a felony, I begin with the Penal Code's definition of that term. A felony is defined as "[a]n *offense* for which a person may be sentenced to a term of imprisonment in excess of one year . . . ." (Emphasis added.) General Statutes § 53a-25 (a). The Penal Code instructs that "[a]ny

violations. Said provisions shall apply to convictions under section 21a-278 except that the execution of any mandatory minimum sentence imposed under the provisions of said section may not be suspended."

offense defined in any other section of the general statutes which, by virtue of an expressly specified sentence, is within th[is] definition . . . [is] deemed an unclassified felony." General Statutes § 53a-25 (c). Because § 14-227a (g) (2) provides that a second conviction under that statute within ten years can be punished by a term of imprisonment of "not more than two years," it undoubtedly meets the incarceration requirement of a felony. Thus, the issue that must be resolved, however, is whether a breach of § 14-227a is an "offense" as that term is defined under the Penal Code.

The term offense is defined in relevant part as "any crime or violation which constitutes a breach of any law of this state or any other state, federal law or local law or ordinance of a political subdivision of this state, for which a sentence to a term of imprisonment or to a fine, or both, may be imposed, *except one that defines a motor vehicle violation or is deemed to be an infraction*. The term 'crime' comprises felonies and misdemeanors. . . ." (Emphasis added.) General Statutes § 53a-24 (a). Thus, an offense is either a crime (felony or misdemeanor) or a violation, unless the breach constitutes a motor vehicle violation or is deemed an infraction. In addition to providing a definition of felony, the Penal Code also defines the terms misdemeanor, violation and infraction.

Turning to the definitions provided, crimes are distinguished by a potential term of imprisonment. See General Statutes § 53a-25 (a) (felony); General Statutes § 53a-26 (a) (misdemeanor).[5] By contrast, "[a]n offense, for which the only sentence authorized is a fine, is a violation unless expressly designated an infraction." General Statutes § 53a-27 (a). A breach of § 14-227a is

---

[5] General Statutes § 53a-26 (a) provides: "An offense for which a person may be sentenced to a term of imprisonment of not more than one year is a misdemeanor."

not designated an infraction, and it is not a violation under § 53a-27 because it carries varying potential terms of imprisonment depending on whether it is a first or repeat offense. See General Statutes § 14-227a (g); see also footnote 1 of this dissenting opinion. Therefore, a breach of § 14-227a is either a crime that falls within the definition of offense under § 53a-24 (a), or a motor vehicle violation that falls within the exception to that definition.

The phrase "motor vehicle violation" is not defined in the Penal Code or elsewhere in the General Statutes. In the absence of a statutory definition, it would appear, at first blush, that the legislature intended to incorporate the definition of "violation" into the phrase "motor vehicle violation." Applying that definition would limit the exception to those motor vehicle laws that are punishable by fine only. See General Statutes § 53a-27 (a). Although the majority would adopt an additional limitation to that exception, such that it only would encompass those breaches that have been designated expressly as "motor vehicle violations," by its own admission, such an interpretation would create a null set of "motor vehicle violations"[6] and, accordingly, render the exception superfluous. Undoubtedly, such a result must be rejected, as it contravenes settled principles of construction. See *Foley* v. *State Elections Enforcement Commission*, 297 Conn. 764, 792, 2 A.3d 823 (2010) ("[i]n construing statutory language, '[n]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous' "); see also *Vibert* v. *Board of Education*, 260 Conn.

---

[6] The majority acknowledges in footnote 13 of its opinion that "a review of the other statutes in the motor vehicle chapter reveals that the legislature has not chosen to define a breach of any statute as a motor vehicle violation."

167, 176, 793 A.2d 1076 (2002) (every word in statute presumed to have meaning).

Putting the majority's construction aside, I recognize that if we were to incorporate the definition of "violation" under § 53a-27 (a) into the term "motor vehicle violation," such a construction would not render the exception superfluous, as it would limit application to numerous motor vehicle laws that are punishable by fine only. See General Statutes § 53a-27 (a). Under that view, a breach of § 14-227a would not fall into the exception to the definition of a criminal offense. Indeed, § 14-227a uses the term "criminal prosecution . . . ."[7] General Statutes § 14-227a (b) and (e).

---

[7] The majority argues that the exclusion of § 14-227a from the "motor vehicle violation" exception also is supported by the fact that § 14-227a refers to the "offense" of operating under the influence. That usage, however, is insufficient to compel any conclusion about legislative intent. When defining the conduct prohibited and punishment prescribed, the motor vehicle chapter often uses the word "offense" as that term is commonly understood, rather than as it is defined under the Penal Code. "[O]ffense" means, generally, "[a] violation of the law"; Black's Law Dictionary (9th Ed. 2009); or "an infraction of law . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1995).

For example, the motor vehicle provision addressing a failure to stop when signaled by a police officer is referred to as an "offense" and designates a breach of its terms as an "infraction . . . ." General Statutes (Rev. to 2009) § 14-223 (a); see also General Statutes § 14-36 (i) (1) (referring to individual committing first "offense" who shall "be deemed to have committed an infraction"). An offense expressly designated as an infraction, however, expressly is excluded from the definition of offense, as is a "motor vehicle violation."

The majority also relies upon the use of the term "criminal prosecution" in § 14-227a in reaching its conclusion that § 14-227a is a crime. While this reference superficially appears to support the majority's conclusion, the legislature has referred to persons who may be "prosecuted" for breaches of motor vehicle laws that carry no term of imprisonment. See General Statutes § 14-107 (a) (referring to persons who "may be prosecuted jointly or individually for violation of [specified provisions, including ones expressly designated as 'infractions']"); General Statutes § 14-286 (i) (addressing how individual may be "prosecuted" for breach of provision dealing with operation of motorized cycles, provision expressly designated as infraction). Indeed, looking at the context of the term "criminal prosecution" in § 14-227a suggests that the legislature simply may use this term to incorporate

"It is of course true that, when a statutory definition applies to a statutory term, the courts must apply that definition. The question in the present case, however, is whether the statutory definition applies in the first instance." *Commissioner of Environmental Protection* v. *Mellon*, 286 Conn. 687, 692–93 n.7, 945 A.2d 464 (2008). In considering whether the definition of "violation" under § 53a-27 (a) applies, I am mindful that the "legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 404, 999 A.2d 682 (2010). I also am mindful that, although the legislature has provided a definition of the term "violation," it also has instructed that "[t]he provisions of [title 53a, the Penal Code] shall apply to any offense defined in this title or the general statutes, unless otherwise expressly provided *or unless the context otherwise requires* . . . ." (Emphasis added.) General Statutes § 53a-2. A review of the Penal Code and other related statutory provisions reveals that the legislature consistently has used the phrase "motor vehicle violation" in a manner requiring a broader interpretation than the Penal Code's definition of "violation."

I begin with the definition of " 'offense' " in subsection (b) of § 53a-24, which sets forth a limitation on the motor vehicle exception in subsection (a) of § 53a-24.[8] Section 53a-24 (b) provides in relevant part: "Notwithstanding the provisions of subsection (a) of this section, the provisions of sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations. . . ." A review of the enumerated provisions, which concern sentenc-

---

certain standards and procedures into the process of seeking a conviction for breach of § 14-227a, rather than implying that the process will be a prosecution for a "crime." Specifically, the reference to such a prosecution is used in the course of establishing evidentiary rules for any proceedings seeking conviction for a breach of § 14-227a.

[8] See footnote 4 of this dissenting opinion for the text of § 53a-24.

ing, reveals that the vast majority of these provisions apply only to convictions with terms of imprisonment.[9] If the legislature had intended the phrase "motor vehicle violation" to refer to breaches punishable by fine only, it seems unlikely that it would have referred to such a broad range of inapplicable provisions. If the term "motor vehicle violation" is construed to include breaches punishable by a term of imprisonment, I avoid rendering most of these provisions superfluous. See *AvalonBay Communities, Inc.* v. *Orange,* 256 Conn. 557, 588–89, 775 A.2d 284 (2001) ("It is a basic tenet of statutory construction that the legislature did not intend to enact meaningless provisions. . . . Accordingly, care must be taken to effectuate all provisions of the statute." [Citation omitted; internal quotation marks omitted.]).

Significantly, one of the sections in the enumerated range specifically refers to "a motor vehicle violation for which a sentence to a term of imprisonment may be imposed . . . ." General Statutes § 53a-28 (e) (2) (addressing conditions of sentence of probation).[10]

___

[9] As the Appellate Court previously has noted: "General Statutes §§ 53a-28 through 53a-44 are the sections of the [P]enal [C]ode which, inter alia, set out the authorized sentences for the classified and unclassified offenses (i.e., felonies, misdemeanors and violations) and provide for such sentencing mechanisms as probation, conditional discharge and unconditional discharge. [Section 53a-24 (b)] would be rendered meaningless by the state's analysis, since 'motor vehicle violations,' within the meaning of . . . § 53a-24 (a), could only be transgressions carrying a fine. Yet, the purpose of [§ 53a-24 (b)] is to make clear that 'the sentencing principles enumerated in sections 53a-28 to 53a-44, inclusive, shall apply to motor vehicle violations.' Commission to Revise the Criminal Statutes, Penal Code Comments, [Conn. Gen. Stat. Ann. § 53a-24], p. 8. There would be no purpose served by legislatively authorizing the application of sentencing provisions of the [P]enal [C]ode, i.e., suspension of execution of sentences of imprisonment conditioned on terms of probation and conditional discharge, to a 'motor vehicle violation' if a 'motor vehicle violation' consisted only of statutes authorizing punishment by a fine." *State* v. *Kluttz,* 9 Conn. App. 686, 693–94, 521 A.2d 178 (1987).

[10] General Statutes § 53a-28 (e) provides: "When sentencing a person to a period of probation who has been convicted of (1) a misdemeanor that

Identical language appears in the only other provisions in the Penal Code in which the legislature has used the term "motor vehicle violation . . . ." General Statutes § 53a-173 (a)[11] (addressing failure to appear in second degree); General Statutes § 53a-222a[12] (addressing violation of conditions of release in second degree). Moreover, the legislature has used similar "for which a sentence to a term of imprisonment may be imposed" language in the criminal procedure chapter of the General Statutes when referring to motor vehicle violations. See General Statutes § 54-56*l* (a) ("[t]here shall be a supervised diversionary program for persons with psychiatric disabilities accused of a crime or crimes or a motor vehicle violation or violations for which a sentence to a term of imprisonment may be imposed, which

---

did not involve the use, attempted use or threatened use of physical force against another person or (2) *a motor vehicle violation for which a sentence to a term of imprisonment may be imposed,* the court shall consider, as a condition of such sentence of probation, ordering the person to perform community service in the community in which the offense or violation occurred. If the court determines that community service is appropriate, such community service may be implemented by a community court established in accordance with section 51-181c if the offense or violation occurred within the jurisdiction of a community court established by said section." (Emphasis added.)

[11] General Statutes § 53a-173 (a) provides: "A person is guilty of failure to appear in the second degree when (1) while charged with the commission of a misdemeanor or *a motor vehicle violation for which a sentence to a term of imprisonment may be imposed* and while out on bail or released under other procedure of law, such person wilfully fails to appear when legally called according to the terms of such person's bail bond or promise to appear, or (2) while on probation for conviction of a misdemeanor or motor vehicle violation, such person wilfully fails to appear when legally called for any court hearing relating to a violation of such probation." (Emphasis added.)

[12] General Statutes § 53a-222a (a) provides: "A person is guilty of violation of conditions of release in the second degree when, while charged with the commission of a misdemeanor or *motor vehicle violation for which a sentence to a term of imprisonment may be imposed,* such person is released pursuant to subsection (b) of section 54-63c, subsection (c) of section 54-63d or subsection (c) of section 54-64a and intentionally violates one or more of the imposed conditions of release." (Emphasis added.)

crimes or violations are not of a serious nature"); see also General Statutes § 54-130a (f) (in "the case of any person convicted of a violation for which a sentence to a term of imprisonment may be imposed, the board [of pardons and paroles] shall have authority to grant a pardon, conditioned, provisional or absolute, in the same manner as in the case of any person convicted of an offense against the state").[13] That phrase is similarly treated in General Statutes § 51-193u (a), which authorizes a magistrate to handle "[c]ases involving motor vehicle violations, excluding alleged violations of sections 14-215, 14-222, 14-222a, 14-224 and 14-227a and any other motor vehicle violation involving a possible term of imprisonment . . . ." In sum, my review has yielded numerous statutes that consistently refer to motor vehicle violations punishable by a term of imprisonment. Notably, such a violation could not exist under the interpretation adopted by the majority. In my view, this usage evidences a clear legislative intent that the term "motor vehicle violation" must be given a broader meaning than one that simply incorporates the definition of violation—an offense punishable only by a fine.

---

[13] The legislative history of this provision evidences that the legislature intended for the term "violation" to include motor vehicle violations. Number 07-57, § 1, of the 2007 Public Acts expanded the authority of the board of parole and pardons (board) over "offense[s] against the state" to include "a violation for which a sentence to a term of imprisonment may be imposed . . . ." During debate on the Public Act, one member of the legislature clarified that the expansion of the board's authority would encompass "violations, *for example, motor vehicle violations,* which do carry a possible sentence of incarceration." (Emphasis added.) 50 H.R. Proc., Pt. 11, 2007 Sess., p. 3601, remarks of Representative Michael P. Lawlor. These comments evidence that the legislature believed both that certain "motor vehicle violations" could carry a term of imprisonment, and that it was necessary to explicitly grant the board authority over petitions from convictions for such offenses. That expansion of authority would have been unnecessary if the legislature had believed that those particular convictions fell within the extant authority over petitions relating to "offenses against the state . . . ."

Consistent with the legislature's express acknowledgment that a motor vehicle violation can be punished by a term of imprisonment, the phrase "motor vehicle violation" would appear to incorporate the *common* meaning of "violation," rather than the statutory definition in § 53a-24. A violation is, in general parlance, "[a]n infraction or breach of the law; a transgression"; Black's Law Dictionary (9th Ed. 2009); or "the act of violating"; Merriam-Webster's Collegiate Dictionary (10th Ed. 1995); and "violate," in turn, is defined as "break[ing], disregard[ing] (the law)." Merriam-Webster's Collegiate Dictionary (9th Ed. 1987). Under that meaning, a breach of § 14-227a would constitute a "motor vehicle violation," as it undoubtedly is a violation of a motor vehicle law. Thus, applying that rubric, a breach of § 14-227a would fall within the motor vehicle violation exception to " 'offense' " under § 53a-24 (a) and, thus, could not be a crime, either a felony or a misdemeanor.

I note that such a conclusion would be bolstered by two other distinctions apparent in the General Statutes. First, there are several provisions in which the legislature has drawn a distinction between a person convicted of a crime and a person convicted of a violation of § 14-227a or another motor vehicle law that carries a potential term of imprisonment. See General Statutes § 14-44 (b) (limiting commercial operator's license to person who "[h]as no criminal record [or] has not been convicted of a violation of subsection [a] of section 14-227a within five years of the date of application"); General Statutes § 54-56e (b) (2) (conferring discretion on court to invoke accelerated rehabilitation program with respect to defendant who, inter alia, "has no previous record of conviction of a crime or of a violation of section 14-196, subsection [c] of section 14-215, section 14-222a, subsection [a] of section 14-224 or section 14-227a"); General Statutes § 54-143 (a) (imposing fees on persons "convicted of a felony," "convicted of a

misdemeanor or convicted under sections 14-219, 14-222, 14-224, 14-225 and 14-227a"). Second, a review of title 14 of the General Statutes governing motor vehicles reveals eleven statutes in which, unlike § 14-227a, the legislature expressly has designated breaches as misdemeanors or felonies.[14] Although it is possible that the legislature intended a breach of § 14-227a to constitute an unclassified felony or misdemeanor; see General Statutes §§ 53a-25 (c) and 53a-26 (c); such a conclusion is unlikely in light of the legislature's frequent practice of designating breaches of the motor vehicle code as misdemeanors or felonies when it intended such an result.

There is one aspect of the statutory scheme that superficially appears to support the conclusion that a breach of § 14-227a is a crime, but I disagree with the majority's treatment of that provision. Specifically, General Statutes § 53a-40f[15] allows an individual to be desig-

---

[14] See General Statutes § 14-10 (k) (disclosure of personal information from department of motor vehicles is class A misdemeanor); General Statutes § 14-52 (selling or repairing motor vehicle without license is class B misdemeanor); General Statutes § 14-62b (e) (selling used motor vehicle parts without recycler's license is class C misdemeanor); General Statutes § 14-65 (f) (selling motor vehicle at auction without license is class B misdemeanor); General Statutes § 14-100a (d) (5) (transporting child in motor vehicle without required restraint is class A misdemeanor); General Statutes § 14-103d (b) (violation of regulations regarding motor vehicle's using pressurized gas is class C misdemeanor); General Statutes § 14-106b (d) (operating motor vehicle without functioning odometer is class A misdemeanor); General Statutes § 14-106d (c) (selling or offering to sell fake air bag is class A misdemeanor); General Statutes § 14-213b (b) (operating motor vehicle with insufficient insurance coverage is class D felony); General Statutes § 14-223 (b) (failure to stop motor vehicle when signaled to do so by officer in police vehicle is class A misdemeanor and class C felony); General Statutes § 14-227k (c) (avoiding or tampering with motor vehicle ignition interlock device is class C misdemeanor).

[15] General Statutes § 53a-40f provides: "(a) A persistent operating while under the influence felony offender is a person who (1) stands convicted of a violation of section 53a-56b or 53a-60d and (2) has, prior to the commission of the present crime and within the preceding ten years, been convicted of a violation of section 53a-56b or 53a-60d or subsection (a) of section 14-227a or been convicted in any other state of an offense the essential elements

nated as a "persistent operating while under the influence felony offender" under specified circumstances, which in turn allows the court to impose a harsher sentence than otherwise would apply. To be so designated, a person must be convicted of either manslaughter in the second degree with a motor vehicle under General Statutes § 53a-56b,[16] a class C felony, or assault in the second degree with a motor vehicle under General Statutes § 53a-60d,[17] a class D felony, and have a prior conviction under either of those offenses *or § 14-227a*. Although the majority argues that the combination of the terms "persistent" and "felony" indicates that the legislature necessarily viewed a prior conviction under § 14-227a as a felony, this construction fails substantively and linguistically. An essential element of both §§ 53a-56b and 53a-60d is that a person must "operat[e] a motor vehicle [while] under the influence of intoxicating liquor or any drug or both," thereby incorporating the conduct prohibited by § 14-227a. A breach of § 14-227a, therefore, properly is viewed as a lesser included offense of §§ 53a-56b and 53a-60d.[18] See

of which are substantially the same as section 53a-56b or 53a-60d or subsection (a) of section 14-227a.

"(b) When any person has been found to be a persistent operating while under the influence felony offender, the court, in lieu of imposing the sentence authorized by section 53a-35a for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony."

[16] General Statutes § 53a-56b (a) provides: "A person is guilty of manslaughter in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes the death of another person as a consequence of the effect of such liquor or drug."

[17] General Statutes § 53a-60d (a) provides: "A person is guilty of assault in the second degree with a motor vehicle when, while operating a motor vehicle under the influence of intoxicating liquor or any drug or both, he causes serious physical injury to another person as a consequence of the effect of such liquor or drug."

[18] It is well settled that a law may not be classified as a crime, but nonetheless can be treated as such for purposes of the lesser included offense doctrine. See *State* v. *Kluttz*, 9 Conn. App. 686, 690, 521 A.2d 178 (1987). For similar reasons, the majority's reliance on a similar treatment of §§ 53a-

*Carpenter* v. *Commissioner of Correction*, 290 Conn. 107, 120, 961 A.2d 403 (2009) (offense deemed lesser included when it would not be "possible to commit the greater offense . . . without having first committed the lesser" [internal quotation marks omitted]). Indeed, to be designated as a "persistent operating while under the influence felony offender" under § 53a-40f, an individual must have been convicted of operating a motor vehicle while under the influence at least twice—the first occasion could be under *either* § 14-227a (a) or § 53a-56b or § 53a-60d—but, on the second occasion, *must* have committed one of two specific felonies. The "persistent" designation is attached to the *conduct*—operating under the influence, an element shared by all the offenses—not the *felony designation*. Indeed, because a first offense under § 14-227a carries a maximum term of imprisonment that would render it a misdemeanor, if subject to classification as a criminal offense, it could not under such circumstances constitute a felony.

In sum, the majority's interpretation creates contradictions and inconsistencies within the Penal Code and throughout the General Statutes that my interpretation wholly avoids. "We do not mechanistically apply [P]enal [C]ode definitions to a statute but interpret the language in a manner that implements the statute's purpose." *State* v. *Harrison*, 228 Conn. 758, 763, 638 A.2d 601

56b and 53a-60d under § 14-227a (g) is undermined by this shared element. Section 14-227a (g) provides that a prior conviction under § 53a-56b or § 53a-60d can qualify as the "same offense" as § 14-227a for determining whether the defendant is a repeat offender and subject to harsher sentencing. See footnote 1 of this dissenting opinion. Although the majority claims that the legislature must have considered a breach of § 14-227a to be "comparable to a felony involving a motor vehicle," by incorporating these two offenses into the § 14-227a sentencing provisions, the legislature has merely ensured that an individual convicted under a different statute in part for conduct identical to that prohibited by § 14-227a be treated as having violated § 14-227a.

(1994); see *In re William D.*, 284 Conn. 305, 312, 933 A.2d 1147 (2007) ("[a]lthough we agree that the definition of 'child' under [General Statutes] § 46b-120 [1] could be applied literally to [General Statutes] § 46b-141 [b] to support the respondent's construction, we eschew such a mechanistic application of the definition given the internal inconsistencies and consequences that would ensue in clear contravention of the broader purposes of the delinquency scheme").

I also note that this court is not writing on a blank slate in determining whether breaches of motor vehicle laws that carry a term of imprisonment constitute criminal offenses under the Penal Code.[19] Although neither this court nor the Appellate Court squarely has addressed the present question in a dispositive manner, both courts have dealt with closely related issues in past cases. In *State* v. *Kluttz*, 9 Conn. App. 686, 689, 521 A.2d 178 (1987), the Appellate Court considered whether a breach of General Statutes § 14-222a, negligent homicide with a motor vehicle, was a lesser included offense of General Statutes § 53a-57, misconduct with a motor vehicle. The court concluded that, "[a]lthough we agree with the defendant that negligent homicide with a motor vehicle is a 'motor vehicle violation' within the meaning of . . . § 53a-24 and therefore is not an 'offense' or 'crime' within the meaning of that statute . . . we hold that it is an offense for purposes of the lesser included offense doctrine." (Citation omitted.) Id., 690. Consistent with my prior observation in this opinion; see footnote 9 of this dissenting opinion and related text; the Appellate Court noted that an interpretation of § 14-222a that did not deem a conviction of

---

[19] As this court previously has noted, there is nothing in the legislative history to § 1-2z to suggest that the legislature intended to overrule cases decided prior to the enactment of § 1-2z. See *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 218–19 n.10, 939 A.2d 541 (2008).

that statute to fall within the "motor vehicle violation" exception to the definition of offense would render superfluous the limitation to that exception in § 53a-24 (b). Thereafter, in *State* v. *Brown*, 22 Conn. App. 108, 109, 575 A.2d 699, cert. denied, 216 Conn. 811, 580 A.2d 61 (1990), the Appellate Court held that a violation of § 14-227a "constituted a violation of that condition of [the defendant's] probation order forbidding [the defendant] from violating 'any criminal law' of this state." Prior to reaching that conclusion, however, the Appellate Court, on the basis of the analysis in *Kluttz*, concluded that "for purposes of . . . § 53a-24 (a), § 14-227a is a motor vehicle violation and not a 'crime.' " Id., 111. Although this conclusion squarely addresses the question in the present case, this statement could be viewed either as dictum or an essential predicate to the ultimate holding.[20]

In subsequent decisions, however, this court has assumed the correctness of the predicate conclusions in *Kluttz* and *Brown* and, thus, has treated breaches of motor vehicle statutes with potential terms of imprisonment as not being classified as criminal offenses under the Penal Code. I have, therefore, focused my inquiry on whether convictions under such motor vehicle statutes nonetheless could be treated as crimes for other purposes. In *State* v. *Guckian*, 226 Conn. 191, 193, 627 A.2d 407 (1993), this court considered whether a violation of General Statutes § 14-215 (c), operating a motor vehicle with a suspended license or registration, constituted a "crime" for purposes of eligibility for sub-

---

[20] The majority suggests that reliance on *Kluttz* and its progeny is inappropriate, however, because the *Kluttz* decision relied on the "unique genealogy of § 14-222a." *Kluttz* also, however, relied on a textual analysis of the Penal Code definitions and related provisions in reaching its conclusion, provisions that equally are applicable to § 14-227a. While the majority does not dispute the correctness of *Kluttz* as it pertains to § 14-222a, they have not provided a textual basis for distinguishing §§ 14-222a and 14-227a in connection with the motor vehicle exception to the definition of offense under the Penal Code.

stance abuse treatment under General Statutes § 17a-656, now General Statutes § 17a-699. In answering that question in the affirmative, this court nonetheless relied favorably on the Appellate Court's decision in *Brown* and assumed that § 14-227a "is a motor vehicle violation." Id., 201. Similarly, in *State* v. *Harrison*, supra, 228 Conn. 760, this court considered whether a breach of § 14-227a constituted an "offense" within the meaning of General Statutes § 54-1f (a), which authorizes police officers to continue pursuit of an offender outside of their jurisdiction in order to effectuate an arrest. In concluding that it did, the court noted that "application of § 54-1f (a) has not been restricted to felonies or misdemeanors as defined in the [P]enal [C]ode, and thus may be applied to motor vehicle violations." Id., 764. Accordingly, this court, sub silentio, assumed that a breach of § 14-227a is a motor vehicle violation, not a criminal offense. In *State* v. *Trahan*, 45 Conn. App. 722, 733–34, 697 A.2d 1153, cert. denied, 243 Conn. 924, 701 A.2d 660 (1997), the Appellate Court expressly adopted that assumption when holding that a violation of § 14-227a constituted a violation of the defendant's accelerated rehabilitation, noting in the process: "We have previously determined that [driving while intoxicated] does not constitute an offense as defined by § 53a-24."[21]

---

[21] In addition to the decisions discussed in this opinion, the majority points to this court's decision in *State* v. *Dukes*, 209 Conn. 98, 547 A.2d 10 (1988), as support for its construction. In *Dukes*, this court summarily stated in the course of discussing another issue that "[o]perating a motor vehicle while under suspension [as prohibited by § 14-215] is a misdemeanor." Id., 124. Because the court did not discuss the basis of that conclusion, this court since has interpreted that statement merely as treating § 14-215 as a crime (misdemeanor) for the limited purpose relevant in *Dukes* and not as a determination that such a breach is classified under the Penal Code as a crime. See *State* v. *Guckian*, supra, 226 Conn. 199 (describing *Dukes* as having "concluded that a violation of § 14-215 was a crime for purposes of a search of the defendant's person without reaching the distinct question of whether a violation of § 14-215 is a crime for general classification purposes under § 53a-24 of the [P]enal [C]ode"). The principle that "[w]hat may or may not be a criminal offense for the purposes of a particular statutory

Although construing the "motor vehicle violation" exception to the definition of offense in § 53a-24 to mean a breach of *any* motor vehicle law, irrespective of the penalty attached, is the only construction consistent with both these cases and the body of our General Statutes, I nevertheless consider whether there is anything in the genealogy or legislative history of §§ 53a-24 and 14-227a to undermine such a conclusion. I conclude that there is not. Section 14-227a, or its predecessors, predated the enactment of § 53a-24 and the rest of the Penal Code. At the time the Penal Code was enacted, the treatment of persons who were convicted of driving while intoxicated was fundamentally different than it is today. Although such conduct always had been punishable by some term of imprisonment,[22] for many years, it carried no mandatory term of imprisonment. By 1930, it was "a matter of common knowledge that some city, town and borough courts are imposing fines, or fines with a suspended jail sentence, in many cases involving second, third and fourth offenses, rather than a jail sentence with a possibility of an appeal and loss of fine to city or town." (Internal quotation marks omitted.) *Kelly* v. *Dewey*, 111 Conn. 281, 289, 149 A. 840 (1930). The continuation of this pattern of suspending sentences for such conduct is evidenced by the fact that, when

categorization *is not necessarily determinative of whether it is a criminal offense for* [other] *purposes*"; (internal quotation marks omitted) *State* v. *Guckian*, supra, 198, quoting *State* v. *Kluttz*, supra, 9 Conn. App. 699; is, however, a settled principle of law. See, e.g., *Illinois* v. *Vitale*, 447 U.S. 410, 419, 100 S. Ct. 2260, 65 L. Ed. 2d 228 (1980) (for purpose of double jeopardy analysis, noncriminal traffic violation may be criminal "offense"). Accordingly, any prior decisions of this court and the Appellate Court that have treated a breach of § 14-227a or another motor vehicle statute as a crime for some specific limited purpose, when consistent with the policy informing that purpose, are entirely consistent with my decision today. Therefore, the majority's reliance on *Dukes* is misplaced, as that decision is consistent with my interpretation.

[22] See, e.g., General Statutes (1949 Rev.) § 2412 (predecessor to current § 14-227a, imposing possible penalty of six months imprisonment for first breach, up to one year for second or subsequent breaches).

the legislature finally imposed a mandatory sentence for a breach of § 14-227a in 1980, it prescribed only a two day mandatory sentence for second breaches, and further provided that the two day sentence could be served on a weekend. Public Acts 1980, No. 80-438, § 3. This history indicates that, at the time the Penal Code was enacted and "motor vehicle violations" were excepted from the classification of criminal offenses, the dominant opinion of breaches of § 14-227a was that such conduct was not particularly reprehensible, and certainly was not considered "criminal."[23] Indeed, it is easy to forget that it was not until the 1980s that the organization Mothers Against Drunk Driving was formed.[24]

The purpose of the classification system set forth in §§ 53a-24 through 53a-27 was, "[a]ccording to the drafters of the [Penal] Code . . . 'to eliminate the kind of irrationally disparate sentences which often existed in prior law between essentially similar serious crimes, and irrationally similar sentences between crimes of greatly varying seriousness, and to substitute therefore a system which will, as nearly as is possible, treat essentially the same similarly serious kinds of conduct.' "

[23] Indeed, at the time of passage of Public Act 80-438, the legislatively established blood alcohol level required for breach of § 14-227a was more than twice its current level. See General Statutes (Rev. to 1979) § 14-227a (blood alcohol level ten-hundredths of one percent).

[24] The fact that attitudes had been more lax about the treatment of drunk drivers similarly is reflected in our decisions in *Shore* v. *Stonington*, 187 Conn. 147, 444 A.2d 1379 (1982), and *Craig* v. *Driscoll*, 262 Conn. 312, 813 A.2d 1003 (2003). The former concluded that an action in negligence could not be maintained against a town police officer for the death of a person whose vehicle was hit by an intoxicated driver whom the officer previously had stopped and let go because the officer owed no specific duty to the decedent to enforce the state's motor vehicle laws. *Shore* v. *Stonington*, supra, 151, 157. The court in *Craig* v. *Driscoll*, supra, 327–30, 339–40, recognized a common-law negligence action against a purveyor of alcohol for serving alcohol to an adult patron who, as a result of his intoxication, injures another and held that the statutory limitation on recovery under the Dram Shop Act, General Statutes § 30-102, was not the exclusive remedy.

J. Gittler, Connnecticut Penal Code Reference Manual (1971) p. 2-1. There is no apparent connection between that purpose and the classification of breaches under the motor vehicle laws as misdemeanors or felonies.

The commentary to § 53a-24 is not particularly illuminating.[25] Although the commentary to subsection (a) of

[25] The commentary provides in its entirety: "Subsec. (a). This section defines the terms 'offense', 'crime', and 'violation'. 'Offense' is a general term which means a breach of state or local 'criminal' law—i.e., one that calls for imprisonment or fine for breach thereof. 'Crime' means either a felony or a misdemeanor. 'Violation', which must be read in connection with section 53a-27, means an offense calling only for a fine for breach thereof. The concept of a 'violation', which is taken from the Model Penal Code, is new. Section 53a-24 makes clear that conviction of a violation does not 'give rise to any disability or legal disadvantage based on conviction of a criminal offense.' It is a new category of non-criminal offense; conduct which should be proscribed but conviction for which should in no way brand the offender a 'criminal.' Thus, for example, a person who has been convicted only of a violation can truthfully answer 'no' to the question: Have you ever been convicted of a crime?

"Subsec. (b). The definition of 'offense' in subsection (a) makes clear that it does not include motor vehicle infractions. The purpose of this provision is to except from the operation of the Code, except as provided in subsection (b), motor vehicle infractions. Subsection (b), however, provides that the sentencing principles enumerated in sections 53a-28 to 53a-44, inclusive, should apply to motor vehicle violations. Thus, a motor vehicle violator would have the limits of his sentence determined by the motor vehicle section, since his 'offense' would be an 'unclassified misdemeanor' within the meaning of section 53a-26 (c); but he would be sentenced under the principles and procedures of sections 53a-28 to 53a-44." Commission to Revise the Criminal Statutes, Penal Code Comments, Conn. Gen. Stat. Ann. (West 2007) § 53a-24, comment, pp. 454–55.

We note that, at the time this commentary was written, § 53a-24 did not expressly exclude "infractions" or "motor vehicle infractions" from the definition of offense; it simply excluded "motor vehicle violations." That fact and the commentary's references to "motor vehicle violations" lead us to assume that the commentary uses "motor vehicle infractions" synonymously with "motor vehicle violations." Because the commentary's use of the word "infraction" predated the statutory definition of that term in § 53a-27, we further assume that the authors of the commentary intended "infraction" to have its ordinary meaning; at that time, "the act of breaching or violation; infringement; a violation." The American Heritage Dictionary of the English Language (1969). Accordingly, we interpret "motor vehicle infractions" as encompassing all breaches of motor vehicle laws; that the phrase is apparently used synonymously with the term "motor vehicle violations" in the commentary only further supports our ultimate conclusion.

§ 53a-24 instructs that "violation" should be read "in conjunction" with the § 53a-27 definition of that word, the term "violation," without further descriptive terms, is used three times in the definition of "offense," and the commentary does not expressly state that this definition similarly applies to the term "motor vehicle violation." Indeed, the commentary to subsection (a) does not even refer to the motor vehicle violation exception. That exception is discussed in the commentary to subsection (b) of § 53a-24. In considering the meaning of that commentary on the precise question before us, Judge David Borden, who previously had been the executive director of the commission to revise the criminal statutes and one of the drafters of the Penal Code, stated, when writing for the Appellate Court: "[T]he commentary to . . . § 53a-24 (b) is less than a model of clarity and contributes to the confusion of whether a motor vehicle violation is an 'offense.' See Commission to Revise the Criminal Statutes, Penal Code Comments, [Conn. Gen. Stat. Ann. (West) § 53a-24, comment]. The first three sentences of the commentary point toward the conclusion that a motor vehicle violation is not an 'offense.' The fourth sentence lends some support to the contrary conclusion, namely, that it is an 'offense.' In this instance, we hesitate to draw any firm inferences as to legislative intent from this Delphic commentary." *State* v. *Kluttz*, supra, 9 Conn. App. 694 n.8. I agree with Judge Borden's characterization and similarly decline to rely on this ambiguous commentary to reach a conclusion that would conflict with numerous related statutes, which are far more persuasive interpretive tools.

The majority suggests that legislative debates over various amendments to § 14-227a and related provisions support the conclusion that a breach of § 14-227a constitutes a crime.[26] While the majority relies on the fact

[26] The defendant also argues that a 1985 amendment to § 14-227a first inserted the word "offense"; see Public Acts 1985, No. 85-596, § 1; and did so essentially to codify the Appellate Session of the Superior Court's decision

that several legislators have referred to driving while intoxicated as a "crime" or a "criminal" act, I note that legislators' comments during debate can be linguistically imprecise, or can rely on a term's common meaning rather than a legal or statutory definition. Indeed, speeding has been referred to as a "crime" in legislative debates, even though it is only punishable by a fine and license suspension, and is, in the case of a first offense, expressly designated as an "infraction."[27] See General Statutes §§ 14-111b and 14-219. As this court previously has recognized, "[t]he term 'crime' is ordinarily so broadly defined, however, that its common meaning is not instructive in determining whether the statutory term 'crime' includes motor vehicle violations." *State* v. *Guckian*, supra, 226 Conn. 198. The common meaning of "crime" is simply "an act or the commission of an act that is forbidden . . . ." Merriam-Webster's Collegiate Dictionary (10th Ed. 1995).

Although the majority focuses on the generic use of the term "crime," it fails to give any consideration to the fact that the legislators never referred to a breach of § 14-227a as a felony. During debate over No. 99-255, § 1, of the 1999 Public Acts, the amendment to § 14-

in *State* v. *Anonymous (1980-5)*, 36 Conn. Sup. 527, 531, 416 A.2d 168 (1980), which had concluded that a breach of § 14-227a is an "offense" within the meaning of § 53a-24. Because the term "offense" already was used in § 14-227a prior to that court's decision, and because the amendment was made five years and eleven amendments after the decision in *Anonymous (1980-5)*, we disagree that the 1985 amendment constituted a legislative endorsement of that decision.

[27] In the course of a debate over amendments to § 14-227a, for instance, the president pro tempore and chair of the Senate clarified a confusing statement made by another Senator on the distinction between a speeding violation and a conviction for operating under the influence, saying "whether it be a motor vehicle violation [speeding] or a drunken driving violation, it falls under the broad category of criminal offense." 28 S. Proc., Pt. 16, 1985 Sess., p. 5365, remarks of Senator Philip S. Robertson. The imprecision in this terminology is reflected in the fact that, even under the majority's construction, a motor vehicle violation would not be a criminal offense under the Penal Code.

227a that increased the potential sentence for a second qualifying offense into a range where for the first time it would satisfy the incarceration requirements of a felony, the amendment's sponsor stated that his proposal "substantially increases the penalties both in terms of financial penalties, incarceration, and [counseling] programs for repeat offenders." 42 S. Proc., Pt. 9, 1999 Sess., p. 2926, remarks of Senator Robert Genuario. In the course of his detailed discussion of the increased penalties for repeat offenders under § 14-227a, Senator Genuario emphasized the explicitly listed statutory consequences, but at no point mentioned any altered criminal status or any additional collateral consequence. While debate over the amendment was limited, at each point at which the amendment was debated in either legislative chamber, at least one legislator spoke about the increased penalties for repeat offenders, but no legislator ever discussed a change in criminal status, mentioned any collateral consequences, or even uttered the word felony. Especially in light of the overwhelming textual evidence to the contrary, I simply cannot accept that the legislature would have intended to establish a new felony under our General Statutes without the barest acknowledgment of that decision and its consequences.[28] I note, additionally, that at the time of this amendment, the decisions in *Kluttz, Brown,* and their progeny had all been issued. If the legislature had disagreed with those decisions' apparent conclusions that § 14-227a did not define a crime, consistent with our presumption that "the legislature is mindful of judicial construction relevant to any legislation it enacts"; *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 200 n.14, 491 A.2d 1058 (1985); it stands to reason that, in the course of amending § 14-227a, the

---

[28] Accordingly, I am unpersuaded by the majority's argument that the mere increase in potential sentence indicates legislative intent that a second qualifying breach of § 14-227a subjects an individual to the full consequences of a felony conviction.

legislature would also have amended that statute to reflect its desire that it be classified as a criminal offense under § 53a-24.

It is important to note that the only consequence flowing from the decision in the present case is whether a second qualifying conviction under § 14-227a would impose on the plaintiff both the stigma of being designated a convicted felon and, more significantly, a number of other collateral consequences that attach to such a designation. Unlike the appropriateness of attaching such consequences to crimes of violence or moral turpitude, a review of the collateral consequences of having been convicted of a felony leads us to conclude that all but two of those consequences would seem to be inappropriately applied to an individual solely on the basis of a qualifying conviction under § 14-227a.[29] Such a designation would preclude the plaintiff from employment in certain specified fields,[30] as well as impact his

---

[29] Although the plaintiff has not made this argument, we recognize that a "convicted felon" status would, under General Statutes § 7-294d (c) (2), preclude him from serving as a police officer, and, under General Statutes § 29-28 (b), would preclude him from possessing a firearm. While we can understand the logic of attaching these collateral consequences for a second qualifying conviction of driving while intoxicated, these two consequences are overwhelmingly outnumbered by consequences that appear to lack any logical connection to the nature of a conviction under § 14-227a.

The majority argues, however, that it would yield an absurd result to treat a second qualifying breach of § 14-227a as a motor vehicle violation while treating certain expressly designated motor vehicle crimes, which the majority apparently suggests are less blameworthy than a breach of § 14-227a, as crimes. I hesitate to substitute my own judgment for what is appropriately considered "criminal" for that of the legislature; I note that the legislature has attached severe penalties to a second breach of § 14-227a, and, accordingly, I am unpersuaded by the majority's suggestion that such breaches are not punished appropriately without the attachment of felony status. Additionally, I would suggest that the express designation of some sections of the motor vehicle code as crimes; see footnote 14 of this dissenting opinion; supports the view that the absence of such a designation is both deliberate and meaningful.

[30] Among numerous other consequences by virtue of that felony conviction, the plaintiff could be precluded from acting as a sports agent; General Statutes § 20-559e; or as a wholesaler's salesman. General Statutes § 30-17b.

ability to be employed in unenumerated professions that exclude convicted felons from their ranks. Notwithstanding the extreme seriousness of a breach of § 14-227a, these consequences, like many of the other collateral consequences attached to conviction for a felony, would seem to be inappropriate for even multiple breaches of § 14-227a.[31]

I note, finally, that, in reaching my conclusion that a breach of § 14-227a is a "motor vehicle violation," and accordingly cannot be classified as a crime generally or a felony specifically, I am mindful of the legislature's intent to treat driving while intoxicated as a serious problem that calls for penalties commensurate with the potential harm caused by such actions. As one legislator aptly remarked, the legislative intent of § 14-227a is to "[impose] severe and appropriate penalties on those individuals who insist on endangering innocent people by drinking and driving"; 42 S. Proc., supra, p. 2929, remarks of Senator Catherine Cook; and to give "those individuals who do not fear the penalties for driving while intoxicated in today's law . . . something to fear. Something to make them think twice about what they stand to lose if they embrace drunk driving as a lifestyle." Id., pp. 2928–29, remarks of Senator Cook. Thus, the majority's focus on the view that members of the

The plaintiff also would be precluded from: serving as a juror; General Statutes § 51-217 (a); conducting a bazaar or raffle; General Statutes § 7-174; working as a "major contractor"; General Statutes § 20-341gg (b); working as a licensed pawnbroker; General Statutes § 21-40; working as a telecommunicator; see General Statutes § 28-30 (e); or working as a private detective. General Statutes § 29-154a.

[31] The majority suggests that the choice of sister jurisdictions to treat operating a motor vehicle while under the influence as a crime should weigh into our consideration. Ultimately, I am unpersuaded that the choices of other states in this area are relevant to the present question; the majority has not pointed to any state with a comparable motor vehicle exception in their laws, meaning that the question of classifying operating a motor vehicle while under the influence in other states would be, as a matter of statute, a far simpler exercise.

General Assembly eventually came to hold about the seriousness of a breach of § 14-227a misunderstands the narrow focus of the question before us. Giving effect to the legislature's clearly expressed intent in the text of the scheme to deem a violation of § 14-227a to fall within the "motor vehicle violation" exception would do nothing to upset the appropriate and strong penalties faced by those who drive while intoxicated. The legislature merely declined to impose the stigma and collateral consequences of a felony conviction upon those individuals. Such a policy determination is exclusively in its province. The clearly expressed legislative intent is not to classify a breach of a motor vehicle law as a crime under the Penal Code unless expressly designated as such. Accordingly, I would affirm the judgment of the trial court concluding that the defendant, the commissioner of public safety, improperly has placed the notation "convicted felon" on the criminal records of the plaintiff, Ricky A. McCoy, and other similarly situated individuals who have received a second conviction of violating § 14-227a.

I respectfully dissent.